## NEWMAN vs. T .& L. A. LABEAUME.

1. An award made on a submission under the act of 1835, concerning arbitrations, is incomplete until signed by the arbitrators, and attested by a subscribing witness. Until this is done, its delivery to the parties is nugatory. It may at any time after, be done. The attestation of the witness may be made on the return of the award, by the order of the court.

2. Errors of law, or incorrect conclusions as to facts, are not sufficient to set aside an award. There must be under our statute, corruption, partiality, or some misconduct of the arbitrators calculated to prejudice the rights of the parties.

## APPEAL from St. Louis Circuit Court.

SPALDING & TIFFANY, *for Plaintiff in Error.*

### POINTS AND AUTHORITIES.

I. Judgment should not have been entered on the award, because there were no subscribing witnesses, as required by statute. Revised Code, 71, § 6.

1. The award was complete, and the office and character of the arbitrators had terminated when the witnesses signed. Watson on arbitration, 83 (9 Law Library.) 3 Greenleaf R. 85; 6 Easts R. 309; 4 Easts

R. 584; 8 Easts R. 54; Hardin's R. 227; 2 Littell's R. 54; 1 Coxe R. 144; 1 Coxe R. 435.

2. The proper oath was not taken by the arbitrators.

II. The award should be vacated. 1st, for the partiality of Chadwick, one of the arbitrators. 17 John. R. 410-417. See Revised Code. 2nd, for the refusal to hear evidence as to S. B. Howard, and from books. 5 Mun. R. 10; see also revised Code. 3rd, for refusal to have the books produced; for though afterwards the arbitrators looked into them, Newman did not have access to them, and L's affidavits do not deny Newman's statements. 4th, because Chadwick looked at the books and papers produced by Labeaume privately, after arbitration commenced. 5th, because they go into the consideration of the charge of Newman that stock was charged to him at higher price than to Labeaume. 6th, because arbitrators exceeded their authority, to-wit: in allowing charge of Labeaume's for settling up the concern, when this was not in the specifications.

GAMBLE AND BATES, *for Defendant in error.*

NAPTON, J., *delivered the opinion of the court.*

During the pendency of an action of assumpsit in the St. Louis court of common pleas, brought by Messrs. Labeaume against Newman, the parties entered into an agreement under their hands and seals to submit that matter, and all matters in relation to a co-partnership formerly existing between them, and all other matters in difference between them, to the arbitration of three persons, to wit: Seth A. Ranlett, Alfred Chadwick and Joseph Ridgway. The two former were chosen by the parties respectively, and the latter selected by the two first. By the articles of submission, the award was to be made on or before the 15th April, 1843, and was agreed to be entered as a judgment of the St. Louis circuit court. Each party was required to furnish a bill of items to the opposite party, and the arbitrators were not to take into consideration any items not included in such bills. An award was accordingly made on the 27th March, 1843, and drawn up in duplicate, and signed and sealed by all the arbitrators, requiring Newman to pay a sum of money to the Labeaumes. One copy was delivered to the Messrs. Labeaume, and the other to Newman. On discovery that the law required the award to be attested by subscribing witnesses, the copy of the award given to Newman was procured from him, without informing him of the purpose for which possession of it was desired. The copy handed to the Messrs Labeaume was also obtained, and each

copy was acknowledged by the arbitrators, in the presence of two subscribing witnesses, called in for that purpose, and after being thus attested, was re-delivered to the parties interested. All this took place on the same day. The award was then filed in court, and a motion made for judgment thereon. A cross motion was made by the appellant to vacate the award, for the following reasons:

1. Partiality in two of the arbitrators.

2. Misconduct in refusing to hear testimony offered by the appellant.

3. Misconduct in refusing to order the production of certain books and papers, demanded by the appellant.

4. Misconduct of Chadwick in examining the books and papers of the appellees' *privately* after his appointment, and in coming to conclusions thereon before the meeting of the arbitrators.

5. Uncertainty of the award..

6. Because the arbitrators exceeded their powers and imperfectly executed them.

7. The allowance of five dollars per diem to the arbitrators.

In support of the motion to vacate the award, sundry affidavits were filed. The affidavit of Newman, after giving a history of the matters in difference between him and the Labeaumes, according to his understanding of them, alleges that Chadwick, one of the arbitrators, had previous to their meeting, had access to the books and papers of the partnership of T. Labeaume & Co., and had received private explanations from the said T. & L. A. Labeaume or one of them. Such at least, he states, was the inference he drew, from the acquaintance manifested by said Chadwick with these books and papers from the commencement of the arbitration, and his facility in comprehending the explanations given by the said T. & L. A. Labeaume. The affiant further stated, that during the progress of the arbitration, the said Chadwick manifested petulence and irritation, when objections were made, or evidence offered by the affiant, and refused to hear testimony, which he said would impeach the integrity of the said T. & L. A. Labeaume. The affiant therefore believed the said Chadwick to be prejudiced against him. The affidavit further states that the affiant offered to produce evidence to show the dividends of the steamboat Howard, formerly belonging to the partnership, and to show what sums of money were received of said partnership from the proceeds of said boat, evidence which the affiant believed to be essential to his interests, but which the arbitrators refused to admit. The affiant also declared, that he had called for the production of the books and papers of the new firm of T. Labeaume & Co., (of which he was not a member,) expect-

ing to show by said books, that the new firm had received moneys, notes, &c., on account of the old firm, and not credited to said old firm, but the said T. & L. A. Labeaume refused to produce them, and the arbitrators refused to order their production, and the said affiant had no opportunity of examining them during the arbitration. The affidavit further states, that in order to ascertain the amount of freight properly chargeable on certain goods purchased in Philadelphia by T. Labeaume, to the affiant, the affiant required the production of the bills of lading, alleging them to be in possession of the said Labeaumes; but said Chadwick, arbitrator as aforesaid, declared it was unnecessary, and said bills of lading were not produced. The affiant objected to sundry items allowed said Labeaume, in the settlement by the arbitrators, and objected to the allowance made to the arbitrators for their services, &c.

The affidavit of Jonathan Jones stated, that the affiant thought that during the whole arbitration, Chadwick seemed to be rather the advocate of the said T. & L. A. Labeaume, than one of the arbitrators; that from the acquaintance manifested by said Chadwick with the books of the old partnership of T. L. & Co., and his readiness in comprehending the explanations of the Messrs. L., he inferred that said Chadwick had made a previous examination of the books, and had received explanations from the Messrs. Labeaume, or one of them, or their clerk. The affiant further stated that the account of the steamboat Howard, as kept in the books of said partnership was complicated, and that no definite result could be ascertained without long examination, and explanations from the book-keeper; yet from the commencement of the investigation said Chadwick seemed very well acquainted with the said account, and with the manner in which T. &. L. A. Labeaume explained said account. Said Chadwick also, in the opinion of the affiant, seemed to be irritated and excited when any claim was advanced by Mr. Newman, which said Chadwick thought, if allowed, would impeach the character of the said Labeaumes. The affiant also stated that the arbitrators refused to cause the books of the new firm of T. L. & Co., to be produced.

The affidavit of John R. Shepley, is confined to the conduct of Chadwick and the other arbitrators, and in substance agrees with the statement of Newman and Jones, on this head.

The counter affidavits in support of the award, were those of Ranlett, Ridgway and Chadwick.

Ranlett states, that he was selected by Newman, as an arbitrator, and that he and Chadwick, (the arbitrator chosen by the Labeaumes,) se-

lected Joseph Ridgway, and that Newman upon being advised of the selection, appeared well pleased; that the arbitrators commenced the investigation on the 16th March, 1843, and proceeded therein, in the presence of the parties; that the arbitrators neither rejected nor refused to receive any evidence offered by either party, unless upon a decision that it was irrelevant; that they had before them all the books of the old firm of T. L. & Co., that when Newman demanded the production of the books of the new firm of T. L. & Co., the Labeaumes at first refused to produce them, but afterwards they were produced, and both sets of books were constantly before the arbitrators, and they were fully examined. These books of the new firm were before the arbitrators after the second or third day, and the refusal to produce them at first, had no effect on the ultimate decision of the arbitrators. That the arbitrators had before them the ledger of the s. b. Howard, and the cash book produced by Mr. Newman, and everything that was necessary to a proper understanding of the affairs of the boat, and no evidence relative to the boat, necessary to an understanding of its affairs, was rejected, so far as the affiant recollected. All papers required by said Newman to be produced, were produced, except a certain bill of lading, which was lost, and the substance of which was sufficiently shown from memoranda furnished by Mr. Newman.

As to sundry items of the settlement complained of in the affidavit of Newman, the affiant gives an explanation, not material to be noticed here. The affiant stated that Mr. Chadwick, one of the arbitrators, was a man of quick and ready mind, intimately acquainted with bookkeeping, and withal, somewhat irritable, and although his temper was occasionally manifested during the investigation, the affiant believed he had an entire willingness to do justice to Mr. Newman; and in settling the final award, was willing to allow Mr. Newman every thing that could with propriety be claimed for him. The affiant concludes with expressing his entire satisfaction with the result, as being consonant to equity, &c.

The affidavit of Ridgway, another arbitrator, states, that he at first declined acting, but at the personal solicitation of Mr. Newman, he finally consented. He confirms the statement of Ranlett, in relation to the production of the books of the new firm of T. Labeaume & Co., and expresses about the same opinion in relation to Chadwick.

The affiant of Chadwick states, that "the affiant never examined the books which were submitted to the arbitrators, until after the arbitrators commenced their session, and so far as he recollects, never seen them before; that Mr. Newman frequently volunteered to converse with him

on the subject of dispute between the parties, after his selection as an arbitrator, and gave the affiant his views on the subject; that the subject was also occasionally mentioned to him by one of the Messrs. Labeaume, but that his conversations with Mr. Newman were more frequent, more protracted and more in detail, and so far as the affiant had any knowledge of the matter in dispute between the parties, previous to their sittings, as arbitrators, that knowledge was chiefly derived from the conversations of Mr. Newman." His affidavit in other respects corresponds with those of Ranlett and Ridgway.

The affidavit of the book keeper of the old and new firm of T. Labeaume & Co., was also filed, confirmatory of the award.

Upon these affidavits the circuit court refused to vacate the award, but entered up judgment on the same.

The objections taken to this award are of a two-fold character, the first of which are based upon the forms of the submission and award, and the others arise from the conduct of the arbitrators.

The objections to the attestation of the award, are placed upon the hypothesis, that after the delivery of the award to the parties, the arbitrators were *functi officio*, and their subsequent acts were void. In the cases cited by the counsel for the appellant, the law seems to be well settled, that after an award has been made, pursuant to the terms of reference, an alteration of the award, in any particular will not be permitted, and if made, will be a nullity. But the submission in the present case having been made under our statute, which requires the award to be attested by a subscribing witness thereto, the award was not completed until all the forms had been complied with. By the articles of submission, it was agreed that the award should be made a judgment of the court, and by the 6th section of the act concerning arbitrations (Revised Code, '35 p. 71,) this could not be done, unless it was subscribed by the arbitrators and attested by a subscribing witness. Untill both these acts were done, the award was incomplete, and its delivery to the parties in this imperfect state, was nugatory, and could not divest the arbitrators of the power of proceeding to complete the formalites required by the terms of submission. In all the cases alluded to above, an alteration had been made in the body of the award, after the award was complete. Here no alteration has been made, but a neglected formality is supplied. Had it been entirely omitted, the court was authorized by the 10th section of our statute, to correct such defect.

The oath taken by the arbitrators is also objected to, as insufficient. The statute requires them to swear "faithfully and fairly to hear and examine the matter in controversy." The oath taken was, "We do sol-

emnly swear that we will faithfully and fairly hear and examine the matter in controversy, submitted to us by Louis A. Labeame, Theodore Labeaume and Jonas Newman, trading under the firm of T. Labeaume & Co.; and that we will make a just award, according to the best of our understanding, in conformity to the articles of submission."

Had the words, "trading under the firm of T. Labeaume & Co., been omitted, no objection it is presumed, would have been taken to the form of the oath. The subsequent clause of the affidavit, which recognizes the duty of making an award "in conformity to the articles of submission," we consider sufficient to show that these words were regarded as mere words of description, and therefore merely superfluous.

The remaining objections to the award, are founded upon the conduct of the arbitrators, as disclosed in the affidavits.

Arbitrations being domestic tribunals, selected by the parties themselves, and tending to terminate disputes at less expense than would be encountered in the ordinary courts of justice, courts incline to look upon their awards with indulgence. Mere errors of law, or wrong conclusions as to facts, will not be sufficient to set aside an award; but our statute has provided that there must be corruption or partiality, or some misconduct calculated to prejudice the rights of the parties.

The temper displayed by Chadwick, one of the arbitrators in this case, during the investigation, however unbecoming a person selected to decide upon the rights of others, would not of itself be conclusive of either partiality or corruption. This irritability on the part of Chadwick, and the facility with which he comprehended the complicated accounts of the Labeaumes, constitute the grounds upon which the charge of prejudging the matter is predicated. Chadwick positively denies that he had ever seen their books and papers previous to the trial; he denies that he had ever received any explanations from their clerks, admits however, that Newman had frequently conversed with him on the subject of his dispute with the Labeaumes, and that he had also been spoken to by Mr. Louis A. Labeaume, but he declares that so far as he had any knowledge of the questions in dispute, before the investigation commenced, it was chiefly derived from Mr. Newman.

There are doubtless cases in which *ex parte* meetings or conversations between an arbitrator and the parties to the submission, after the arbitrators had assumed the burden of investigation, would require a court to set aside the award. It does not appear in this case, when these conversations with Newman took place; nor does it seem that they could have had any influence upon the decision, as they were held with the party who now complains. Where the award itself is striking-

ly unjust, or so grossly offensive as to create a presumption of partiality or corruption, very slight circumstances in the conduct of the arbitrators might be seized upon by a court as indicative of the spirit in which it was conceived. There is nothing of the kind pretended to exist in this case. The settlement of a long and tedious partnership account was involved, and though it is contended that some items were improperly allowed, on one side, and perhaps some rejected on the other, it is not shown to what extent, if any, injustice has been done. The conduct of Chadwick therefore which was certainly not entirely unexceptionable, should not of itself set aside the award.

The exclusion of pertinent testimony is the second objection made to the proceedings of the arbitrators, and if sustained by proof, it is an undisputed ground for vacating the award.

The excluded testimony complained of, relates to the steam boat Howard. Newman states that he offered evidence to prove what were the dividends of the steam boat Howard, received by the partnership (owning said boat) and that the books of the old firm of T. Labeaume & Co., had been so imperfectly kept, that the said partnership had not received the proper credit for the said sums so paid; which evidence the said arbitrators refused to admit. Ranlett says in his counter affidavit, "the arbitrators neither rejected nor refused any evidence offered by either of the parties, unless upon a decision that such evidence was irrelevant; that they had before them the ledger and cash book of steam boat Howard, and all that was necessary to a proper understanding of the affairs of the boat, and to ascertain the dividends received by the firm of T. Labeaume & Co., and so far as recollected, no evidence offered by Newman, relative to the boat was rejected." It will be observed that Newman does not specify the evidence he offered, and the statement of Ranlett and the other arbitrators is explicit that no evidence was rejected which had any tendency to throw any light upon the subject in dispute. It is obvious then, that unless the rejected testimony was stated, it is impossible for this court to determine whether it was properly excluded or not.

The most material objection to the award is the refusal of the arbitrators to compel the production of the books of the new firm of T. Labeaume & Co., upon Newman's alledging that these books would show that moneys had been collected on account of the old firm, which had not been duly credited to that firm.

This refusal however was not persisted in, but on the second day of the session of the arbitrators, the books were produced, and as the arbitrators state, carefully examined by them, and continued before them

until the close of the investigation.   Newman states that the books were not so produced "as to be subject to his examination."   Nothing can be plainer than that an *ex parte*, or private examination of these books by the arbitrators without an opportunity being afforded to Newman or his counsel to examine them, would not be a *bona fide* production of the books, in the eye of the law, and would bear such evident marks of partiality as to vacate the award.   The affidavits of neither party are very clear on this point, but it was the duty and would certainly have been the interest of the complainant, if the fact had been as above suggested, to have placed this matter beyond dispute.   His affidavit contains an intimation that the books were not subject to his examination; but how could this be, if they were produced, as the arbitrators declare they were, and constantly before them?   For aught stated in Newman's affidavit, he may have declined examining them after the first refusal of the arbitrators to compel their production.   If this were the fact he could take no advantage now of the error committed by the arbitrators.   The inference that these books were privately examined by the arbitrators without the knowledge of the complainant, which might have arisen from the affidavits of the arbitrators alone, is excluded by the affidavit of Newman himself, which seems to admit that the books were produced, and that he had a knowledge of that fact.   If from any motive he did not see proper to avail himself of that production, it was his own fault.   How this matter in fact was, we are unable to conjecture ; but whatever may have been the facts, it was in the appellant's power to have made them plain, and placed them beyond the reach of surmise.

The fourth objection taken to the conduct of the arbitrators, is that Chadwick examined the books and papers of the Labeaumes privately, after the arbitration commenced.   This objection is either resolvable in the preceding one, and so far has been already considered, or it is intended to declare the law to be that an arbitrator may not, after the commencement of the investigation inform himself in relation to the subject matter of controversy, by a private examination of papers publicly submitted.   Such a proposition, it need scarcely be observed, is not tenable.

The fifth objection taken by the appellant, is that the arbitrators refused to go into an investigation of the charge that the stock of C. Dunseth & Co., was charged to Newman, at higher prices than the portion of the same stock taken by T. & L. A. Labeaume.

The affidavit of Newman on this point is, "that it was agreed that the taking of the stock in the store of C. Dunseth & Co., should form the

basis for the taking of the stock in the store of T. Labeaume & Co., that is, that the same articles should be charged alike, in both accounts of stock, irrespective of the cost of the same; and that the other articles in both stores should bear the same proportion to the original cost. That soon after the stock in the store of C. Dunseth & Co., was taken, the said Louis A. Labeaume, assisted by a clerk in the store, proceeded to take an account of the stock of T. Labeaume & Co. The said goods in the store of T. Labeaume & Co., except a small portion, of the value of about twelve or fourteen hundred dollars, which the affiant Newman received, were taken by the said T. & L. A. Labeaume at the prices put down in the account of stock before mentioned, which prices, it is alledged, were not regulated by the prices charged in the account of the stock of C. Dunseth & Co." It is further alledged in this same affidavit, that "the said arbitrators refused to go into an examination, or to hear evidence upon the point that the accounts of stock in the store of C. Dunseth & Co. and in the store of T. L. & Co. were taken differently, and that the same goods were charged at different prices in the two accounts of stock, unless he, the affiant, would prove an express agreement, that the account of stock in both stores should be taken alike, the arbitrators giving as a reason for such opinion, that it was a sale, &c.

The counter affidavits of the arbitrators on this point, is as follows: "The arbitrators examined the invoice of the stock of C. Dunseth & Co., as the said stock was taken by and charged to the said Newman, and found that the invoice at the prices charged, amounted to some sum above three thousand two hundred dollars, and that the stock was charged to Newman at the sum of three thousand dollars; that Newman took the stand or store occupied by C. Dunseth & Co., and immediately commenced the new business of Dunseth & Newman, in the opening of which, the same stock taken by Newman from C. Dunseth & Co· was charged by him to Dunseth & Newman, at the invoice price, which was upwards of thirty-two hundred dollars. The arbitrators found that the stock of T. Labeaume & Co. taken by Theodore and L. A. Labeaume was charged to them at cost prices, and ten per cent. added to one-half said stock; that upon Newman's taking the stock of C. Dunseth & Co., a bill had been furnished to him and no objection made as to prices, and the arbitrators considering the transaction in relation to the stock of C. Dunseth & Co. a sale to Newman, refused to make the prices in that invoice a basis for changing the prices in the account of stock of T. Labeaume & Co., unless Newman would prove that it was agreed between the parties that the prices in the two stocks were

to be the same. And yet the arbitrators in their final settlement of the business in order to equalize the parties and make an average upon the two invoices of C. Dunseth & Co. and T. Labeaume & Co., added the sum of three hundred dollars to the amount of the invoice of T. Labeaume & Co., and made their award upon the invoice thus increased, although they believed Mr. N. was not entitled to claim it as a strict right.

The affidavit of McAdam, taken in support of the award, is "that he was the book keeper of the old firm of T. Labeaume & Co.—that the stock in the store of C. Dunseth & Co., was $3,204 20, and that after much debate between the said Newman and the Messrs. Labeaume, the said Newman agreed to take said stock at $3,000, and the transaction was in his opinion, a sale, &c."

The objection of the appellant is that the arbitrators would not allow him to show that the prices charged him, in the invoice of the goods of Dunseth & Co.; were different from and of course at higher rates, than the prices of similar articles, as charged in the invoice of that portion which was taken by T. & L. A. Labeaume. The arbitrators deny this, but admit that they required him before he could demand that the invoices should be placed upon the same footing, to prove that such was the agreement of the parties. It seems in truth that the arbitrators did investigate this matter, that they did examine both invoices, and that though they had thus decided against the appellant, as to his legal rights, they still allowed an addition of three hundred dollars to the bill of T. & L. A. Labeaume, in the final settlement, which with the two hundred previously stricken off from the invoice of Dunseth & Newman, was sufficient in the opinion of the arbitrators to effect an equitable average of the prices. How this may have been must depend upon the amount of the invoice of T. & L. A. Labeaume, which is not stated in either set of affidavits.

The affidavit of McAdam, the book-keeper, directly contradicts the statement of Newman relative to an agreement that the prices of the two invoices should be alike.

The only remaining objections to the award is that the arbitrators exceeded their authority in allowing the Messrs. Labeaume for their services in settling up the concern of T. Labeaume & Co., there having been no such charge in the bill of specifications required by the submission; it seems from the statement of Newman that by the articles of co-partnership, the firm of T. Labeaume & Co. purchasedan interest in a steam boat, of which Newman was master, and it was agreed that whilst Newman was so employed, his co-partners, T. & L. A.

Labeaume should be paid out of Newman's share of the profits of the mercantile house, six hundred dollars per annum, each, for his services; but when Newman was out of employment they were to receive only five hundred per annum. Newman having been discharged by the owners of the boat, was during nine months out of employment, in consequence of which he claimed a deduction of one hundred and fifty dollars from the twelve hundred dollars charged by the Messrs. Labeaume. The arbitrators as they state, believing that the services of the Messrs. L. in settling up the business of the firm was fully equivalent to the deduction claimed, allowed the Messrs. Labeaume the full sum claimed. It is not perceived how the allowance of the sum of six hundred dollars could be regarded as an act exceeding the authority of the arbitrators, merely because the making of such allowance may have been drawn from facts not properly before them. It is admitted that the claim of the Messrs. Labeaume for the six hundred dollars per annum, was properly before the arbitrators, but the allowance of the whole claim is objected to, because the arbitrators, in justifying their decision, placed their refusal to make the deduction claimed by Newman on the ground of services rendered by the Labeaumes in settling up the partnership concern of T. Labeaume & Co., for which services no charge had been made in the bill of specifications furnished by the Labeaumes. This claim of the Messrs. Labeaume for the six hundred dollars, was in the bill of particulars; the arbitrators allowed the whole claim, notwithstanding Newman insisted on an abatement to the amount of one hundred and fifty dollars; whether the arbitrators did right in allowing this claim or not, is not a question for our determination. The objection taken rests wholly in the want of power in the arbitrators, and we think that objection is not sustained by the record. The objection is purely technical, and as such is unavailing.

Upon the whole we think the circuit court committed no error in entering up judgment upon the award, and the judgment of that court is therefore affirmed.