Jas M. Reily, Adm'r of Wm. Bennett, Respondent, v. Adeline Russell et al., Appellants.

*Arbitration—Award.*—Mere errors of law or wrong conclusions as to facts are not sufficient to set aside an award of arbitrators; there must be corruption or partiality, or some misconduct calculated to prejudice the rights of the parties. The terms misbehavior and misconduct are not applicable to mere error of judgment, but imply an intention to do wrong.

*Partnership.*—Without an express agreement, one partner cannot charge the firm or his co-partner anything for the extra value of his personal services over those of his co-partner.

*Appeal from St. Louis Circuit Court.*

*Hill & Jewett*, for appellants.

1. The appellants insist that the arbitrators acted upon and awarded on matters not submitted to them by the bond, upon a fair construction in connection with the facts of the case.

(a.) We say that if the bond did authorize an investigation into all that related to the partnership matters, without any reference to what had been settled by the parties, or to what had or had not been claimed by the parties or entered upon the books, still we say, under that power the arbitrators could not award illegal charges or credits to or for either party without an express agreement between the parties in relation to such illegal charges or credits; but that they must confine themselves to such charges or credits as one partner had a right to make or receive as against the other, according to law and equity, upon the facts proved.

(b.) One partner cannot, without an express agreement to that effect, charge the other, or the partnership, with anything for extra value of his services, over that of the other, rendered during the existence of the partnership. The following authorities are cited: Coll. Part. § 183 ; Caldwell v. Leiber, 7 Page's Ch. 483 ; Franklin v. Robbinson, 1 John's Ch. 157–165 ; Bradford v. Kemberley, 3 John's Ch. 431 ; Phillips v. Turner, 2 Dev. & Bat. Eq. 123 ; Sto. Part. §

182; Thornton v. Proctor, 1 Ans. 94; Jones v. Noy, 2 Mylne & Keene, 125; Dougherty v. Van Nostrand, 1 Hoff. Ch. 68; Hayne v. Thatcher, 25 Wend. 450; Newland v. Tate, 3 Ired. Eq. Rep. 226.

(c.) One partner cannot charge another, after the dissolution, a commission or any other charge for collecting partnership debts, or paying a partnership liability from funds collected from partnership debts. (Coll. Part. § 199; Sto. Part. § 331 and note; Whittle v. McFarlane, 1 Knapp's Priv. C. C. 312; Dougherty v. Van Nostrand, 1 Hoff. Ch. 68; 1 B. Mon. 179; Burden v. Burden, 1 V. & B. 170; Wilby v. Finney, 15 Mass. 120; 3 Kent's 6th ed. 64, n. C.) Upon this point the cases referred to are clear and explicit, and fully sustain the statement of this point. The text books make no exceptions.

II. A plain mistake in law or fact is good cause for setting aside an award. (Shinnie et al. v. Coil, 1 McCord's Ch. 478; Herrick v. Blair, 1 John's Ch. 101.)

*Glover & Shepley, Lackland, Cline & Jamison,* for respondent.

I. To authorize the court to vacate an award under our statute, it must be shown that the arbitrators were corrupt, or were partial, or guilty of some other misconduct calculated to prejudice the rights of the parties. (Newman v. Labeaume, 9 Mo. 30; Vaughn v. Graham, 11 Mo. 575; McClure v. Sprayer, 13 Mo. 104; Bridgman v. Bridgman et al., 23 Mo. 272; Smith v. Cutter, 10 Wend. 589; Offert v. Proctor, 4 Bibb. 252.)

In the case of Newman v. Labeaume, and Smith v. Cutter, it is decided that the terms misconduct and misbehavior, as used in the statute, imply a wrongful intent, and not a mere error in judgment on the part of the arbitrators. There is nothing in this testimony showing improper conduct on the part of the arbitrators, and, moreover, this evidence would be incompetent to prove any such misconduct. This must be shown by affidavits, (R. C. 1855, p. 198, § 19, Arbitra-

tions,) and such was the practice at common law, which is adopted by the statute.

BAY, Judge, delivered the opinion of the court.

For several years prior to 1st of December, 1856, Bennett and Russell were co-partners, engaged in the wholesale grocery business, under the name and style of Russell & Bennett; but on the day above mentioned the partnership was dissolved, and the partners undertook to settle the partnership accounts between them. They divided the real estate between them, and Bennett, who continued the business, took the stock on hand. A difficulty having arisen between them in regard to the correctness of the settlement, and with respect to other matters growing out of their partnership transactions, it was agreed to submit all matters of controversy to the decision of arbitrators, each party selecting one, and the two thus selected to appoint a third, which agreement was reduced to writing, and in such submission it was stipulated that a judgment of the St. Louis Circuit Court should be rendered upon the award of said arbitrators.

After a long and laborious investigation, a majority of the arbitrators made an award in favor of Bennett, for the sum of nine thousand and twenty-three dollars and fifty-five cents, and further awarded that Russell's administratrix should pay the costs of the arbitration. In due time Russell's administratrix moved the Circuit Court to vacate said award, for reasons specified, which was refused, and judgment was thereupon entered upon said award, from which action of the Circuit Court an appeal is taken. It is insisted by respondent, that no written motion to vacate or modify said award was filed in the Circuit Court by appellant. It is true that no such motion appears in the record, but the record shows that the appellant notified Bennett in writing of his intention to file such a motion, which notice specified with great particularity the grounds relied upon for vacating the award, and a copy of this notice was filed in the Circuit Court, and seems to have been regarded by both court and

counsel as a motion; and as it was so treated in the lower court without any objection on the part of respondent, it will be so treated here, notwithstanding its irregularity and want of conformity to the statute.

The grounds upon which it was sought to vacate the award are substantially as follows:

1. Partiality and corruption in the two arbitrators who made the award.

2. That the said two arbitrators were guilty of misconduct in this, that they wilfully and in defiance of the law and the facts of the case, and of the terms of submission, erroneously awarded to Bennett the sum of ten thousand dollars, for personal services rendered the firm of Russell & Bennett, for three years before the dissolution, over and above those rendered by Russell; also, that they erroneously awarded to Bennett the sum of three thousand eight hundred and thirty-one dollars and forty-five cents, for commission, at the rate of five per cent. on moneys collected and disbursed on account of said firm, after the dissolution of the same.

The appellants also moved to modify and correct the award, upon the ground, chiefly, that in allowing the above amounts, together with some other items, the arbitrators awarded upon matters not submitted to them.

No affidavit was filed in support of the motion, nor was any evidence introduced except the evidence of witnesses, as taken down in writing before the arbitrators. No fact was shown to the court which furnished the slightest evidence of partiality or corruption on the part of the arbitrators or either of them, nor is it pretended by the appellant that any misconduct was shown, except as stated in the second ground of objection to the award; and it was held by this court, in case of Newman v. Labeaume, 9 Mo. 29, that mere errors of law, or wrong conclusions as to facts, are not sufficient to set aside an award; but there must be corruption or partiality, or some misconduct calculated to prejudice the right of the parties. Under a statute similar

to ours, the Supreme Court of New York held, that the terms misconduct and misbehavior are not applicable to a mere error in judgment, but imply an intention to do wrong. (Smith v. Cutler, 10 Wend. 589.)

Such has been the almost universal writing of the courts upon statutes similar to ours, and it is founded in reason and good sense.

An arbitration is a domestic tribunal, created by the will and consent of parties litigant, and resorted to to avoid the expense, delay, and ill feeling consequent upon litigating in courts of justice. The arbitrators are generally selected from among the friends of the parties, and are not supposed to be well versed in the law, or the technical rules of evidence; but are expected to settle all matters in dispute untrammelled by the niceties of the law, and in a manner that will be just and equitable between the parties; and so favored is this tribunal by our courts, that they will not interfere with an award unless partiality, corruption, or gross miscalculation of figures can be shown, or the arbitrators have awarded on matters not submitted to them. The adoption of any other policy would defeat the very object of an arbitration; for if an award could be set aside for error in judgment, law, or conclusions of facts, not one award in a hundred could stand the test of legal criticism, and parties would be driven to further and protracted litigation.

The next and last point to be considered, is whether the court below erred in overruling the motion to modify and correct the award. The motion was predicated upon the idea, that in allowing Bennett for extra personal services rendered the firm, and in awarding him a commission on moneys collected and disbursed on account of the firm, after the dissolution of the partnership, a majority of the arbitrators awarded upon claims not embraced in the articles of submission.

The bond of submission recites, that on the first of December, 1856, the partnership was dissolved; that the real estate of the firm, consisting of two brick stores, was divided

between them, Bennett taking the corner store and agreeing to pay Russell five thousand dollars as the difference in value between the stores. That for said sum of $5,000, and the further sum of $17,500, on partnership account, Bennett executed ten notes to Russell, each for the sum of $2,250, and secured them by a deed of trust on the corner store, which deed of trust was also intended to secure to said Russell whatever might be found and ascertained to be coming to him, in addition to said notes, upon a full settlement of the unsettled business of the firm of Russell & Bennett. The bond then proceeds :

"And whereas there has not yet been a final settlement of said co-partnership business between the said Russell and Bennett : and whereas the said Bennett, desiring to have said corner store and lot released and discharged from said deed of trust to Russell's trustees, has this day paid off and satisfied said ten notes, with interest, and the said deed of trust has been released of record : and whereas the said deed of trust has been released, and the notes secured thereby have been paid upon the condition that said Russell and Bennett will submit to an arbitration the matters in difference remaining unsettled between them in the said partnership accounts and affairs ; but the said bonus of $5,000 difference between the two stores is not to be submitted to arbitration, and is to be regarded as paid by the said Bennett to Russell, in the paying of said notes ; and, therefore, said parties, Russell and Bennett, have agreed to submit the settlement of said partnership business, notes and accounts of the firm of the co-partners to arbitration, and to have all the accounts thereof adjusted : and whereas it is claimed by Wm. Bennett that he did not owe as much as $17,500 when said notes were given on partnership or other accounts and demands to said Samuel Russell : and whereas it is claimed by said Russell that said Bennett did owe said Russell, on partnership and other accounts, more than said $17,500, and would be found to be indebted, upon a full settlement, in a much larger sum of money to him, the said

Russell: Now, in order to settle all accounts and amounts of every nature, in regard to said partnership business, accounts, and demands, the said parties have agreed and hereby agree to submit," &c.

It is evident enough, from the language employed in the bond, that the parties intended that the arbitrators should make a full and complete settlement between them of all matters, accounts, claims, and demands, growing out of, or having any relation to, their partnership transactions. It is certainly broad enough for that purpose. The parties were brothers-in-law, and no doubt desired that the amicable relations existing between them should remain undisturbed, and, therefore, resorted to an arbitration as a friendly mode of settling their accounts.

It is insisted, that the claim for extra personal services rendered the firm is not recognized by law; in other words, that one partner cannot, without an express agreement to that effect, charge the other, or the partnership, with anything for extra value of his services. This is true, and if such an agreement had been shown, is it not clear that such a claim would fall within the articles of submission? The fact that there was no such agreement does not place the claim outside of the submission, but merely shows that the arbitrators, in allowing the claim, erred in their judgment, which has been shown to be no cause for vacating an award.

Upon a careful review of the whole case, we are of the opinion that no error was committed by the court below.

The other judges concurring, the judgment will be affirmed.