## MELL KARAPSCHINSKY, Respondent, v. HENRY ROTHBAUM, Appellant.

### Kansas City Court of Appeals, February 2, 1914.

1. **ARBITRATION AND AWARD: Sunday.** The parties to this action agreed in writing to submit certain matters in controversy to arbitrators and abide by their award. The parties being of the Jewish Church met in a Jewish Church on Sunday. No witness was offered and no sworn evidence submitted, but the award was agreed upon by the arbitrators. The award was made and published on the following day. *Held*, that the time of the performance of such act is deemed in law to be coincident with the publication.

2. **———: ———: Statutes.** Sec. 3880, R. S. 1909, provides that "no court shall be open to transact business on Sunday unless it shall be for the purpose of receiving a verdict or discharge a jury, etc."

3. **———: Judicial Act.** The making and publishing of an award is a judicial act that would fall within the operation of the statutory prohibition against the performance of such acts on Sunday.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

AFFIRMED.

*Broaddus & Crow* and *J. E. Heffley* for appellant.

*Sam Wilcox* and *G. C. Sparks* for respondent.

JOHNSON, J.—This is an arbitration case. The parties agreed in writing to submit certain matters in controversy to arbitrators and to abide by their award. After taking the oath prescribed by statute, which was done on a secular day, the arbitrators held an informal hearing of the case on Sunday, June 9, 1912, in a Jewish church, the parties to the suit and the arbitrators being Jews. Both parties appeared and voluntarily participated in the hearing. No witness was offered and each of the parties was content to rest his case on his own unsworn statements and arguments and such written documents bearing on the subject at issue as he possessed and chose to produce. Thus informed the arbitrators closed the hearing and agreed on an award which they reduced to writing, signed and published on the following day. Afterward judgment was rendered on this award in the circuit court in favor of plaintiff and defendant appealed.

The only ground on which he asks a reversal of the judgment is that the award and judgment giving it effect are void for the reason that the hearing of the cause occurred on Sunday, a legal holiday. We are cited to the statute (section 3880, Revised Statutes 1909) which provides that "no court shall be open to transact business on Sunday unless it be for the purpose of receiving a verdict or discharging a jury, etc.," and counsel for defendant urge that arbitrators when sitting are a court within the meaning and purpose of that statute.

In some States the making and publishing of an award is considered a judicial act and hence void when done on Sunday (37 Cyc. 585; Story v. Elliott, 8 Cow. [N. Y.] 27), while in others, as observed by the author just cited, an award is considered more in the nature of a contract and, therefore, does not come within the prohibition of a judicial business. Such is the view in Vermont. [Crosby v. Blanchard, 50 Vt. 696; Blood v. Bates, 31 Vt. 147; Sargeant v. Butts, 21 Vt. 99.] Our

statutory law on the subject of arbitration was borrowed from New York (Bridgman v. Bridgman, 23 Mo. 272) and our courts generally have followed the construction of that law appearing in the reported cases in that State. We are, therefore, inclined to the view expressed in Story v. Elliott, supra, that the making and publishing an award is a judicial act that would fall within the operation of the statutory prohibition against the performance of such acts on Sunday. Indeed, the statute is but a legislative recognition and reaffirmation of an ancient common law rule forbidding judicial acts and proceedings on that day which, in law, was set apart as *dies non juridicus*. The Supreme Court of this State in Bonnett's Adm'r v. Russell's Admx., 34 Mo. 524, speaks of an arbitration as "a domestic tribunal, created by the will and consent of parties litigant, and resorted to to avoid the expense, delay, and ill feeling consequent upon litigating in courts of justice," and proceeds with the observation that "arbitrators are generally selected from among the friends of the parties and are not supposed to be well versed in the law, or the technical rules of evidence but are expected to settle all matters in dispute untrammelled by the niceties of the law and in a manner that will be just and equitable between the parties," and so favored is this tribunal by our courts, that they will not interfere with an award unless partiality, corruption, or gross miscalculation of figures can be shown, or the arbitrators have awarded on matters not submitted to them. The adoption of any other policy would defeat the very object of an arbitration; for if an award could be set aside for error in judgment, law, or conclusions of facts, not one award in a hundred could stand the test of legal criticism, and parties would be driven to further and protracted litigation."

It is not expected that formality will be observed in a proceeding before arbitrators or that rules of evi-

dence or practice will be observed. Power is given to arbitrators to issue subpoenas for witnesses to administer oaths and to punish for contempt (section 872, Revised Statutes 1909) but the arbitrators may, with the consent of the parties, dispense with any evidence and adjudge the case on the unsworn statements of the parties themselves. [Wolfe v. Hyatt, 76 Mo. 156; Cochran v. Bartle, 91 Mo. 636.] To issue subpoenas, to swear witnesses and to hear the testimony of such witnesses would be judicial acts that could not be lawfully done on Sunday but none of these things was done in this case, and we perceive no ground on which it may be said that the arbitrators were performing a judicial act when they met informally, listened—not to evidence as that term is understood in law, but to the unsworn assertions and harangues of the parties and, by their consent, considered and determined the controversy between them on those forensic efforts alone and without resort to legal evidence.

The so-called hearing of the case was not a judicial act and since the formal award was not made and published on Sunday but on the following Monday, it is not void though it formally expressed a conclusion the arbitrators reached at the end of a debate heard on Sunday. [Isaacs v. Beth-Hamedah Society, 1 Hilt. (N. Y.) 469.] In that case, which cannot be distinguished from the case in hand, the learned judge writing the opinion observed: "The case of Story v. Elliott would have been in point, if the arbitrators had published it on Sunday. In that case, the publication and the award was regarded as equivalent to the giving of judgment, which cannot be done on Sunday; but I find no case that would warrant us in concluding that the award is vitiated and made void, by what was done by the arbitrators upon a Sunday preceding its publication."

Under our statutes (section 881) the award is not a judgment, but conceding, as we do, that its making and publishing constitute a judicial act, the time of the performance of such act is deemed in law to be coincident with the publication.

It follows from these considerations that the court did not err in rendering judgment on the award.

Affirmed. All concur.