## NEHEMIAH W. SKILLINGS, Plaintiff in Error, *versus* CORNELIUS COOLIDGE AND ANOTHER.

A demand made by copartners, annexed to a submission to referees pursuant to Stat. 1786, c. 21, signed by one of the copartners, is a sufficient compliance with the statute.

When referees under such a submission awarded a sum certain, as due from one to the other of the parties, in full of all demands; and to such award they added certain directions, concerning merchandise belonging to the debtor, and in the hands of the creditor, that the same should be sold, and the proceeds placed to the credit of the debtor, and the balance, after deducting the sum awarded, paid over to him; this was holden not to vitiate the award.

THIS was a writ of error, brought to reverse a judgment rendered by the Circuit Court of Common Pleas in this county, March, 1813, upon a report of certain referees, appointed under the provisions of the statute of 1786, c. 21.

The demand annexed to the original submission was, " *N. W. Skillings* to *Coolidge & Oliver*, Dr. To balance due this day, as per accounts exhibited referees, 15,000 dollars," and was subscribed " *Francis J. Oliver*, for self and *Cornelius Coolidge*," and was dated the 10th of March, 1813. The submission was of the demand annexed, and of all other demands between the parties; and was in the form prescribed by the statute.

The referees reported that *Skillings* should pay to *Coolidge & Oliver* the sum of 13,000 dollars, in full of all demands between them. They then add the following, *viz.:* " It having been admitted by the parties, that *Cornelius Coolidge* and *Francis J. Oliver* have in their hands, and under their control, sundry articles of merchandise, the property of the said *N. W. Skillings*, lodged with them as security for advances made to him, as follows, *viz.:* Coffee shipped per the brig *William* to the north of *Europe;* spices ditto, per brig *Cornelius;* beef per brig *Despatch;* also one bale of sponges, and a quantity camel's hair; * — Now we do award [ *44 ] that the said merchandise shall be sold as soon as may be, the net proceeds of which to be placed to the credit of the said *N. W. Skillings*, free from any charge or expense, other than the said *Coolidge & Oliver* are obliged to pay; and after deducting from the amount received from the sale of the afore-mentioned merchandise the sum of 13,000 dollars, with interest, the balance, if any, to be paid the said *Skillings* on demand."

The report was accepted by the Common Pleas, and judgment rendered for the sum of 13,000 dollars and costs.

The errors assigned were as follows: —

1. That the demand was not assigned by said *Coolidge & Oliver* as by law it ought to have been.

2. That the only demand made by said *C. & O.* against said *S.* was made on the 10th of March, 1813, of a balance of accounts exhibited to referees, at which time there had been no exhibition of accounts to referees, nor had the referees at that time been appointed.

3. That the referees took into consideration divers matters and things, which were not submitted to them ; and did order and direct the disposal, sale, and account, of divers merchandise in their report mentioned, which merchandise was not included in the demand annexed to the rule.

4. That the referees had no power, in and by said rule of reference, to order the sale of any merchandise, belonging to either of the parties to the rule.

5. That the award is conditional, uncertain, and cannot in law be the foundation of any judgment against the said *Skillings.*

6. That the referees had not power to do any act other than to ascertain the balance which might be due, if any, in money from said *Skillings* to said *Coolidge & Oliver*, and to make return thereof, to the end that judgment might be rendered and executed accordingly ; but that the said referees did order the satisfaction of [ * 45 ] the debt they supposed due, by the sale of * merchandise, which was not within the power and authority given them.

7. The general error.

The cause was briefly argued at the last March term, by *Amory*, *Sullivan*, and *Guild*, for the plaintiff in error ; and by *Prescott* and *Hubbard*, for the defendants in error ; and now the opinion of the court † was delivered by

PARKER, C. J.   The first error assigned in this case is, that the demand, upon which the submission to referees was made, was not signed by the parties demanding against the plaintiff in error.   The said *Coolidge & Oliver* were partners in trade, and a signing by one, of any contract touching the partnership concerns, not under seal, would bind both.   This may be considered, therefore, a signing by both, if that were necessary to give validity to the submission. But the signing by one only of two partners, as he would have authority to submit for both, we think would sufficiently comply with the statute. (*a*)

---

† *Jackson*, J., having been of counsel in the original suit, did not sit at the argument or decision upon this writ of error.

(*a*) [According to the authorities, one partner has not authority to bind his copartners by a submission, even of matters arising out of the common business. — *Stead* vs. *Salt*, 3 *Bing.* 101—500. — 4 *J. B. Moore*, 340. — *Strangford* vs. *Green*, 2 *Mod.* 228. — *Mudy* vs. *Osuin*, *Litt. Rep.* 30. — *Lumsden* vs. *Gordon*, *Stark.* 195. — *Morr.* 14567

The next error assigned is, that the demand annexed to the submission is not sufficiently particular to authorize the justice to take the acknowledgment of the parties, and to give jurisdiction to the referees. The statute, in requiring a particular demand, can intend nothing more than that a cause of action shall appear to exist, in order that a frivolous claim, or one which would be manifestly absurd, might not be the ground of the proceedings. In the case of *Jones, in error,* vs. *Hacker,* (1) which was cited to support this objection to the proceedings, the demand was for 250 dollars, with out stating for what it was due; and for aught appearing upon the demand itself, it might have been made for some ridiculous, if not illegal, purpose. In the opinion given by the court, it was stated that the demand need not be as particular as a declaration; but that it must show the cause for which the money was * demanded. In the case at bar, the sum demanded is [ * **46** ] stated to be for the balance of accounts exhibited to the referees; meaning, as both parties have admitted, *to be* exhibited to them. We think this sufficiently particular; as we should if the demand had been for a sum of money for a note of hand, or bond, to be exhibited; which we think would not be objectionable.

The other errors assigned all refer to a supposed irregularity in the report of the referees; and may be considered together, without prejudice to the several objections taken by the plaintiff in error.

The referees, after determining that the sum of 13,000 dollars is due to *Coolidge & Oliver,* and awarding that the same shall be paid to them by *Skillings,* which would have been the proper termination of their report, proceed to consider the state of certain property belonging to *Skillings,* which had been lodged by him with *Coolidge & Oliver,* as security for advances made him by them, all of which was under their control, but beyond sea, in a foreign country. They award that this property shall be sold by *Coolidge & Oliver,* without expense to *Skillings,* and that he should be credited with the proceeds, and that the balance, deducting 13,000 dollars, should be paid over to *Skillings.*

It is contended that this part of the award is void for uncertainty; because it does not describe or specify the property so held, and because no means are provided by the referees, or by the law, by which this intention of the referees may be carried into effect.

But it is not necessary to consider the provision respecting the

*Antram* vs. *Chase,* 15 *East,* 209. — *Gow. Partn.* 66. — *Coll.* 239—261. — 2 *Chitty s Prac.* 77. — *Com. Dig. Abr.* D. 2. — 2 *Bell's Com.* 618, 5th ed. — *Adams* vs. *Bankart,* 1 *Crompt. Mees. & Ros.* 681. — *Karthans* vs. *Farrar,* 1 *Peter's Rep.* 222, 228. — *Buchanan* vs. *Curry,* 19 *Johns.* 137. — 3 *Kent.* p. 49, 4th ed. — *Story on Part.* 169. — ED.]
(1) 5 *Mass. Rep.* 264.

property of *Skillings,* as a part of the report of the referees. The object of their jurisdiction was to ascertain the balance of the accounts between the parties. They were under no necessity of adjudicating upon the property of *Skillings,* which he had pledged, to secure the advances made to him by the defendants in error. If it was so pledged, as appears by the admission of the parties, *Skil-lings* could have made no demand against them for it, or [ * 47 ] for the proceeds, * while the balance of accounts remained against him ; and the referees could not lawfully have set it off against the demands of the defendants in error ; their report would for that cause have been bad.

It is proper, therefore, to consider every thing stated in the report touching this subject, as cautionary on the part of the referees to prevent the inference, which might have been drawn from the submission of all demands, that the property in the hands of the defendants in error had become theirs. This was intended for the security and benefit of *Skillings,* lest he might possibly be concluded by the report from reclaiming this property, when it should have answered its purpose of securing the sum he owed. Specifications of this sort are not unusual, and are often necessary to prevent disputes, which might arise in consequence of the general form of submission, and the effect of a report on all demands between the parties. We do not consider that the right of *Skillings* in the property pledged is settled, or in any manner affected, by the report of the referees ; nor that it was necessary for them to specify the amount of that property, or give any particular description of it His right is altogether independent of that report ; and he is, without doubt, in possession of evidence sufficient to enable him to establish his claim to the whole, whenever he shall be entitled, by payment of his debt, to reclaim it ; or to the surplus of proceeds, whenever by the sales the defendants in error shall have received enough to satisfy their claims.

If any doubt exists of the validity of the report, it results from the manifest intention of the referees, that the defendants in error should not coerce payment of the sum awarded to them, but that they should dispose of the property committed to them in pledge, and pass the proceeds to the credit of *Skillings* on account of the balance found due from him. It may have been perfectly equitable that he should have this indulgence ; for the relations between the parties may have been such, as to render it unjust that [ * 48 ] his other property or * his person should be exposed for this debt, until the termination of the adventures upon the property which his creditors received in pledge ; and we are to believe that justifiable motives induced the referees to make the

provision for the benefit of *Skillings.* If, therefore, an execution of the judgment was necessary to give complete effect to it, we should apprehend that the judgment ought to be avoided, because of the prejudice to *Skillings,* contrary to the intention of the referees.

But the statute does not require that an execution should issue, and it would have been perfectly proper in the court, which rendered the judgment, to have inhibited an execution, until a special order therefor. For this is not one of those civil actions, in which the party recovering judgment is entitled to his execution, at all events, within twenty-four hours after judgment. In the case of *The Commonwealth* vs. *The Pejepscut Proprietors,* (2) it is stated by Judge *Sedgwick,* that if the referees make a conditional report, or provide that the sum they find due shall be paid at a future day, no execution will issue; but that an action of debt on the judgment will lie, when the time of payment has arrived, or, perhaps, an attachment to compel a performance of the report or award.

It is true, that nothing appears upon this record, by which the judgment creditors would be prevented from suing out their execution; but if they do it contrary to the manifest intent of the referees, a remedy may be had by *audita querela.*

If it should happen that the proceeds of the property, under the control of the defendants in error, should be insufficient to satisfy them for the amount of their judgment, they may have their action of debt thereon; and the plaintiff in error will be entitled, under a plea of payment, to avail himself of whatever sums they may have received from his property.

Upon the whole, we see no cause for reversing the judgment, as no formal or substantial error exists, and as the rights of the parties are entirely protected by * the doings of the [ *49 ] referees, on which the judgment is founded.

*Judgment affirmed.*

(2) *7 Mass Rep.* 399.