## UPTON v. STODDARD.

Chapter 4023, Pamphlet Laws of this State, authorized towns to pay, as bounty, such sums as they may deem expedient, to any person who may for three months preceding, have been an inhabitant of such town and who shall enlist on the quota of such town and be mustered into service.

Under this provision a town voted, in accordance with an article in the warrant, to pay enrolled men of said town who may volunteer for the service of the United States for the term of one year and are accepted, the sum of one thousand dollars each, to fill the town quota on the present call for three hundred thousand men.

*Held*, that those who volunteered under this vote, if accepted and mustered in, &c., could recover said bounty if they answered the description given in the vote, and also in the law, but that a person not having the residence required by law, though enrolled, or if having such residence but not enrolled, could not recover said sum.

AT a legal meeting of said town held on the 22d day of February, A. D. 1865, the town amongst other things acted upon the following article in the warrant for said meeting, viz :

"2d. To see what bounty the town will vote to pay enrolled men who have or may volunteer or furnish substitutes since Nov. 1, 1864, for the service of the United States, and to raise and appropriate money therefor, or act anything thereon."

And voted as follows, viz :

"Voted to pay enrolled men of said town who may volunteer for the service of the United States for the term of one year, and are accepted, the sum of one thousand dollars each, to fill the town quota on the present call for three hundred thousand men."

The quota of said town under the call of Dec. 19, 1864, which was the call referred to in said vote, was eight.

On the sixth day of March, A. D. 1865, the quota of said town being unfilled, the plaintiff, being one of the enrolled men of said town, and having been for more than one year preceding an inhabitant thereof, volunteered at West Lebanon to fill the quota of said town, was examined, accepted, and mustered into the service of the United States for the term of one year, as a private in the 1st Regiment N. H. Cavalry, and was duly credited upon the quota of said town, thereby reducing by one the deficiency and the enrollment of said town.

Said plaintiff served in said regiment from the said sixth day of March, 1865, until the regiment was mustered out of service, July 15, 1866. A demand for payment of said bounty was made on the defendants, April 6, 1865, and payment being refused, this action is brought to recover the same.

The military rolls in this district were corrected from time to time, as drafts were made, disabilities to serve allowed, and removals from town to town took place.

These facts being found by agreement of the parties, the questions of law arising thereon were reserved.

*Wheeler & Faulkner*, for plaintiff.

*Lane*, for defendant.

SARGENT, J. Chapter 4023, Pamphlet Laws of 1864, p. 3049, provides that the Governor may appoint State agents to recruit in the insurgent States agreeably to an act of Congress passed in 1864, the men so raised to be credited to the several cities, towns, &c., in proportion to the quota of such city or town. Also that the Governor may appoint such agent for any city or town or sub-district in the State, that may desire the same,· and that such recruits shall be counted upon the quota of such city, town, or sub-district. The act also provides for the compensation of such agents, and by whom it shall be paid, and that a specified bounty be paid to such recruits, and how that shall be paid.

Section 6 provides that the Governor may, by proclamation, offer cer-

tain bounties to different classes of men there specified, who may enlist or volunteer for the different periods of time there mentioned.

Section 7 provides that "any city may by vote of its city council, and any town or place may at any legal meeting thereof duly notified and holden for that purpose, upon or in anticipation of any call of the United States Government for troops during the present war, raise money and appropriate the same as bounty to each person, except those enlisted in or from insurgent States, who shall be mustered into the military, naval or marine service of the United States, or shall have been mustered into said service since the call of the President, dated the fourteenth day of March, 1864, and prior to the passage of this act, to fill the quota of such city, town or place, whether such person shall have voluntarily enlisted or volunteered as a substitute for a drafted or enrolled man, such bounty in no case to exceed, in addition to the State bounty, the sum of one hundred dollars for each one year's man, two hundred dollars for each two year's man, and three hundred dollars for each three year's man, and in the same proportion for any other term of service; and such city, town or place may make such distinction in the bounties to be paid between volunteers and substitutes of drafted or enrolled men as it may deem expedient; and any city, town or place in the same manner may raise money and appropriate the same, as bounty to each man drafted for one year therefrom, who shall be mustered into the service of the United States as part of the quota of such city, town or place, in addition to the State bounty, a sum not exceeding two hundred dollars. And any city, town or place in the same manner may raise money and appropriate such sum as they may deem expedient, to be paid as such bounty to any person who may for three months preceding have been an inhabitant of such city, town or place, enlisting on the quota of such city, or any ward thereof, town or place, and actually mustered into the military, naval or marine service of the United States, and said cities, towns or places may make such distinctions between the bounties, to be paid men volunteering for one, two, or three years, as they may deem expedient."

In this section the first class provided for are those who shall have voluntarily enlisted or volunteered as substitutes for drafted or enrolled men, who should be accepted and mustered into service, who were to receive a certain specified and limited bounty. The drafts were made only from the enrolled men, so that a volunteer for a drafted man, was a volunteer for one who was both enrolled and drafted, while a volunteer for an enrolled man was in place of one liable to draft.

The second class are drafted men for one year, who should be mustered into service, &c., *as part of the quota of such city, town or place*, &c. This last provision was undoubtedly intended to be applied to both classes mentioned; that those to whom the bounties were authorized to be paid should be counted as a part of the quota of the city, town or place paying them. The bounty to this second class was also limited in amount. This class were all of course enrolled, were both enrolled and drafted, but it made no difference how long they had resided in the town where they were drafted, while the first class need not be

enrolled and might have their residence anywhere except in the insurgent States.

The third class are those who may for three months preceding, have been inhabitants of such city, town or place, enlisting on the quota of such city, &c., and actually mustered into service. This class must be made up of those who have been inhabitants of the place three months, and who shall voluntarily enlist on the quota of such place. It made no difference whether they were enrolled or exempt from military duty. With this class the amount of bounty is unlimited.

Under this law the town of Stoddard held a meeting, and the article in the warrant so far as here material, was, "To see what bounty the town will vote to pay enrolled men who  *  *  *  may volunteer or furnish substitutes for the service of the United States, and to raise and appropriate money therefor, or act anything thereon." The town had only in view the relief and compensation of *enrolled* men. Whatever else they might have done under the law, the article in the warrant had reference to enrolled men only. The vote is in accordance with the article in the warrant, saying nothing about the substitutes in the vote as they might have done under the warrant, if they had chosen to do so. The vote was "to pay enrolled men of said town who may volunteer for the service of the United States, for the term of one year, and are accepted, the sum of one thousand dollars each, to fill the town quota on the present call for three hundred thousand men."

This vote could not have been intended to cover the first class mentioned in this section of the law, for that class was confined to *those who should enlist or volunteer as substitutes for enrolled or drafted men.* The vote did not in terms and evidently was not intended to embrace any of that class.

The second class are *drafted men* who should be mustered into service. This class was not included in this vote. The only class to which this vote could properly apply was the third class, and by the amount of the bounty voted it is evident that it was intended to apply to that class only; and as a general rule, no doubt those who were enrolled on the quota of a town had resided there three months or more, though there might be exceptions.

Now suppose all the enrolled men in town had resided there more than three months. Then, while the law authorized the voting of bounties without limit to all who had thus resided in town, whether enrolled or exempts, the vote would only take in a part of what the law covered; but we think that the town having the right to vote such a bounty to all persons having the necessary residence, and who should enlist or volunteer and be accepted, would have the right thus to select any given portion of such persons as were embraced in the provisions of the law, and confine their vote to such portion. The town might make a farther limitation, if they saw fit, than the law had made, and still the vote would be legal, so far as the class which they selected in the vote was within the limits of the class described in the law.

Again, suppose the vote in this case had been to pay to William O. Upton the sum of one thousand dollars if he shall volunteer, &c., and

be accepted to fill the town quota, &c., although nothing had been said in the vote as to whether said Upton was enrolled in said town, or whether he had resided there three months; if, when the matter was inquired into, it should appear that he was enrolled, and had resided in town more than three months, we think the vote would be well enough both under the law and under the article in the warrant. But suppose Upton were not enrolled, the vote would not be good under the article in the warrant. And if he had not resided in town three months, it would not be good under the law.

Again, suppose the vote under that article in the warrant had been to pay a thousand dollars each to eight men by name, (the number necessary to have filled the quota of the town,) if they should each volunteer or enlist for one year, &c., and that upon examination it should be found that six of them had been enrolled in said town, and the other two had not, we think the vote would be valid under the article in the warrant, so far as the six enrolled men were concerned, but not legal as to the other two. And suppose that under said article in the warrant, and under the provisions of the statute we are considering, the vote had been to pay the eight men by name, the thousand dollars each, and on inquiry it should turn out that four of these men had been enrolled in the town and had also been inhabitants therein for more than three months, and that two of the remaining four were enrolled in town but had not lived there three months, and the other two had lived there three months but were not enrolled, the vote would be valid and legal, so far as the first four were concerned, because they had all the qualifications required both by the law and by the article in the warrant; but as to the other four the vote would not be valid, as to the first two of them, because they had not the qualification required by the statute, and as to the last two, because they lacked the qualification required in the article in the warrant.

In the case before us the vote follows the article in the warrant, and is only to pay to enrolled men of said town, who shall volunteer, &c., and there is no objection to the vote on that ground. But is it in accordance with the provisions of the statute? As we have seen, if it be admitted or proved that all enrolled men had been inhabitants of said town three months, then the vote being in form according to the article in the warrant, and in fact in accordance with the provisions of the law, though more limited than the statute, would be well enough. Now there is nothing in the case that shows affirmatively that all the enrolled men had not thus resided three months in town, nor does it appear that they had done so, and so the vote may have included in terms some who would not answer the description required by law with many who would do so. Shall the vote, then, for that cause, be held void for all? or only for such as would not answer the description required by law, but valid as to all such as were unobjectionable both under the law and under the article in the warrant? We think the vote may be held valid in the case of those having the qualifications required by the statute, who were also included in the terms of the vote, and void as to all others.

It being admitted that this plaintiff has all the qualifications required

by the article in the warrant, by the vote, and also by the statute, he is entitled to his bounty as voted by the town. It is suggested that the writ in this case only follows the form of the vote and does not set forth the facts necessary to bring the case within the requirements of the statute. If this is so, the declaration is no doubt defective in that particular, as it should set forth all the facts necessary to make a case both under the vote and under the statute. That defect may, however, be remedied by an amendment.

In giving construction to this vote we may well enough apply the same principles of interpretation that are applied to acts of the legislature. Where the intention is plain it is the duty of the court so to construe the act (the vote in this case) as to carry out these intentions where the language used will fairly admit of such construction. *Fairbanks* v. *Antrim*, 2 N. H. 105. And where the meaning of the words used is doubtful, or they are susceptible of a double construction, that sense is to be adopted which best harmonizes with the context and the apparent policy and objects of the legislature. *Pike* v. *Jenkins*, 12 N. H. 255. And so of the vote in this case, *Opinion of Justices*, 45 N. H. 590.

In *Opinion of Justices*, 41 N. H. 553, it is said that the rule of construction universally adopted is, that where a statute may constitutionally operate upon certain persons or in certain cases, and was not evidently intended to conflict with the constitution, it is not to be held unconstitutional merely because there may be persons to whom or cases in which it cannot constitutionally apply; but it is to be deemed constitutional and to be construed not to apply to the latter persons or cases, on the ground that courts are bound to presume that the legislature did not intend to violate the constitution, and see cases cited, pp. 555, 556.

The same rule that applies in construing a statute under the constitution may be properly applied in construing the votes and acts of towns under a law of the State. *Crowell* v. *Hopkinton*, 45 N. H. 1; *Com.* v. *Clapp*, 5 Gray 97; *Com.* v. *Hutchins*, 5 Gray 482; *Warren* v. *Charlestown*, 2 Gray 84. So a report of road commissioners laying out a highway may be rejected in part where they have exceeded their authority, and accepted for the residue. *Pierce* v. *Somersworth*, 10 N. H. 369; *Patten's Petition*, 16 N. H. 277. So the award of referees may be rejected so far as beyond the submission, and enforced so far as within it. *Peters* v. *Pierce*, 8 Mass. 399; *Deckey* v. *Sleeper*, 13 Mass. 244; *Skillings* v. *Coolidge*, 14 Mass. 43; *McBride* v. *Hogan*, 1 Wend. 326; *Cox* v. *Jagger*, 2 Cow. 638; *Clement* v. *Durgin*, 1 Greenl. 300; *Gordon* v. *Tucker*, 6 Greenl. 247; *Chase* v. *Strain*, 15 N. H. 539; *Tracy* v. *Herrick*, 25 N. H. 381. As no judgment can be given in the case, the entry must be,

*Case discharged.*