J. W. Mitchell *et al.*, Respondents, *v.* Peter Curran *et al.*, Appellants.

### March 21, 1876.

1. An award of arbitrators will not be set aside merely because it is against the law and the evidence.

2. The fact that the verdict is totally unsupported by evidence is not, of itself, evidence of partiality which will warrant the setting aside an award of arbitrators.

3. It is not error for the trial court to look into the question as to whether there is evidence to support the award of arbitrators.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*Slayback & Haeussler*, for appellants, cited: Bluementhal *v.* Torine, 40 Mo. 159 ; Fraugmans *v.* Hersey, 43 Mo. 122 ; Easley *v.* Elliott, 43 Mo. 289 ; Price *v.* Evans, 43 Mo. 397 ; Allen's Admr. *v.* Richmond, Col., 41 Mo. 307 ; Penn *v.* Lewis, 12 Mo. 161, 162 ; McKeon *v.* Citizens' R. R. Co., 42 Mo. 84 ; Schmeidling *v.*Ewing, 57 Mo. 78, 83 ; Doering *v.* Saum, 56 Mo. 479 ; Wag. Stat., ch. 8, sec. 23 ; Hyeronimus *v.* Allison, 52 Mo. 102 ; Squires *v.* Anderson, 54 Mo. 197 ; Tucker *v.* Allen, 47 Mo. 490 ; Shores *v.* Bowen, 44 Mo. 397 ; Morse on Arb. 115, 116, 126 ; Field *v.* Oliver, 43 Mo. 200 ; Shelbina Hotel Assn. *v.* Parker, 58 Mo. 327 ; Russ. on Arb. 61 Law Lib. 175, 176, 177 ; Hall *v.* Hinds, 2 Man. & G. 851 ; Payne *v.* Bailey, 7 Moore, 147 ; Boutilier *v.* Thick, 1 Dow. & Ry. 366 ; Morgan *v.* Mather, 2 Ves. jr. 15 ; 1 Salk. 71 ; Wat. on Arb. 161 ; Bridgman *v.* Bridgman, 23 Mo. 272 ; Vallé *v.* North Missouri R. R. Co., 37 Mo. 445 ; Knowlton *v.* Mickles, 29 Barb. 465 ; Walker *v.* Frobisher, 6 Ves. jr. 70 ; Russ. on Arb. 186, 187 ; Passmore *v.* Petit *et al.*, 4 Dall. 272 ; Field *v.* Oliver, 47 Mo. 200.

*Russell & Smith*, for respondents, cited : Wag. Stat. 145, sec. 11 ; Bennett *v.* Russell, 34 Mo. 527 ; Vallé *v.* North

Missouri R. R. Co., 37 Mo. 445; Moo. on Arb. 293; Burchell v. Marsh et al., 17 How. 344; Morris' C. Co. v. Salt Co., 58 N. Y. 667; Shoyer v. Barclay, 24 Mo. 346; Brown v. Leavitt, 26 Mo. 251.

BAKEWELL, J., delivered the opinion of the court.

. It appears from the record in this case that the plaintiffs and defendants were members of the Union Merchants' Exchange, of the city of St. Louis; that a controversy arose between them in regard to the delivery of some meat which was, by agreement, to be delivered by defendants to plaintiffs, and which defendants, it was said, had not delivered according to contract. The parties entered into an agreement according to the provisions of the statute in regard to arbitration, and thereby submitted the matter in controversy between them to the committee of arbitration of the Union Merchants' Exchange, with right of appeal, according to the rules of said Union Merchants' Exchange, to the committee of appeals. The committee of arbitration found for defendants. The committee of appeals set this award aside, and remanded the cause for a new trial. The committee of arbitration again found for defendants, whereupon, on appeal, the committee of appeals found for plaintiffs in the sum of $600 and the costs of arbitration. It appears, from the 6th rule of the regulations of the Union Merchants' Exchange, that the committee of appeals, on hearing an appeal, takes no new evidence, but merely passes upon the evidence, as preserved in writing, taken on the trial before the committee of arbitrators.

The last award of the committee of appeals was made on March 11, 1874. On May 4, 1874, plaintiffs notified defendants that they would, on May 20th, apply to the Circuit Court for a confirmation of the award, and for judgment. On May 23d, plaintiffs filed their motion to confirm the award, and, on the same day, defendants filed their cross-motion to vacate the same, setting forth the grounds named in the statute, and also filed a paper, verified by affidavits, assign-

ing reasons in support of this motion. The two motions were heard together, and the Circuit Court overruled the motion to vacate, and confirmed the award, and entered judgment thereon for plaintiffs. A motion for a new trial being overruled, an appeal was taken to the general term, where, the action of the court at special term being affirmed, the cause is brought to this court by appeal.

A careful examination of the evidence, as preserved in the record, satisfies us that there is no evidence to support the finding of the committee of appeals, and that the committee of arbitration were bound, upon the evidence as preserved in the record, to find for defendants. Plaintiffs claimed $2,000, and, if entitled to anything, were entitled to $1,200, this being the lowest measure of damage shown by the evidence. But plaintiffs were really entitled to nothing, since it clearly and indisputably appears from the evidence that they refused to receive the meat when tendered according to contract, and refused it on the ground that a part of it had been sprinkled with salt, which sprinkling was done at the express request of their own agent. As the evidence before the committee of appeals was the same written evidence brought before us by this record, it is manifest that they have brought in a verdict without regard to the evidence before them. The question is, can this court interfere? Clearly we cannot, unless it was error in the Circuit Court to refuse to look into the question whether or not there was any evidence to support the finding of the committee of appeals of the Merchants' Exchange, the final arbitrators chosen by the parties themselves.

There are five grounds, and only five, upon which the courts will set aside an award. These are:

1. The insufficiency of the award. That means that it is not certain, final, or mutual; that it does not embrace all matters submitted to the arbitrator; or, that it does embrace matters not submitted to arbitration.

2. A mistake in fact or law *apparent on the face of the award.*

3. Irregularity of the arbitrators in their proceedings; as a refusal or neglect to examine witnesses, or in not giving notice of the meetings.

4. Corruption or misbehavior of the arbitrator.

5. Fraud, or concealment of evidence, by the parties obtaining the award.

As to the second ground, the mistake, to induce the courts to set aside the award, must appear on its face. When the arbitrator, having made his award, discovers and admits that he has committed an error, the courts have no power, it is said, to refer the matter back without the consent of the parties. *Payne* v. *Bailey*, 7 Moore, 147. When matters of law and fact are referred to an arbitrator, his award is final and conclusive; the courts cannot interfere if he is wrong. *Boutilier* v. *Thick*, 1 Dow. & Ry. 366. If judges chosen by the parties erroneously decide a question of law, the court must abide by the decision. *Wood* v. *Griffith*, 1 Swans. 56. So the courts, for a mistake in a matter of fact—as a miscalculation of figures, or the like— will only set aside the award when such mistake appears upon the face of the award. But the court, on motion, will not enter into the merits at large; for, if they did, no person, it is said, would ever undertake to be an arbitrator. *Morgan* v. *Mather*, 2 Ves. jr. 15; 1 Salk. 71; Watson on Arb. 101, etc.

And the English rule in this matter has in no degree been departed from in Missouri. To vacate an award there must be corruption, partiality, or some misconduct of the arbitrators calculated to prejudice the rights of parties. Errors of law, or incorrect conclusions as to fact, are not sufficient. This has been, from the beginning, the consistent and uniform ruling in this State. In *Newman* v. *Labaume*, 9 Mo. 30, and *Smith* v. *Young*, 11 Mo. 566, it is decided that the terms misconduct, and misbehavior, and partiality, as used in our statute, imply a wrongful intent, and not mere error of judgment on the part of the arbitrators. In *Reily* v. *Russell*, 34 Mo. 524, it is said that this

is a domestic tribunal, created by the parties; that its object is to avoid expense and delay; that it is not supposed to know anything of law, or of the rules of evidence; and, unless partiality, corruption, gross miscalculation in a matter of figures, or decision in a matter not submitted be shown, the Circuit Court cannot interfere. In *Bridgman* v. *Bridgman*, 23 Mo. 272, the court says that the question is, not whether the arbitrators are mistaken in their award, but whether they were corrupt; that they are the final judges both of the law and the facts. In *Shroyer* v. *Barkley*, 24 Mo. 333, the court says that corruption, fraud, or undue influence must be proved in order to vacate an award; and, in *Vallé* v. *North Missouri Railroad Company*, it is said that an award will not be vacated, on motion, for any mistake of law or fact which does not appear on the face of the record itself. It is, in fact, competent for disputants to leave a question of fact to the decision of a third party, and, if they do so in a binding way, the question becomes, not what the fact is, but what he says it is.

As manifest corruption in the arbitrators will alone suffice to set aside an award under the statute, it is too late for those who, for purposes of economy, or to save time, or for any other equally laudable motive, have chosen to submit a controversy absolutely to a tribunal which is not bound by legal rules, to invoke the protection of those despised rules when mischief has been worked by the disregard of them. They must then stand the hazard of the die. Had the contest been in court, or before a referee, a finding such as that of these arbitrators, upon the evidence presented in this record, would undoubtedly have been set aside, and twenty such findings on the same evidence must have been set aside twenty times. A verdict against the apparent weight of the evidence may sometimes stand, but a verdict without evidence must inevitably fall. But he who submits to arbitration takes his chances, and those who pass upon the controversy are the sole judges of the

law and the facts, and their action, unless manifestly fraudu-- lent, cannot be reviewed by the courts.

The record in this case shows nothing from which we can see, or from which the Circuit Court could see, that there was any corruption, partiality, or misconduct of the arbi- trators. Were the matter *res integra*, the writer of this opinion might be strongly disposed to consider a verdict. unsupported by evidence a sufficient proof of partiality; but it appears that, in case of an· award, the circumstances. of a finding with no evidence to support it is not partiality, within the meaning of the statute ; and certainly there is no reason to doubt that these arbitrators were honest enough,. and meant to do substantial justice according to their light. Upon what principle they undertook in this case to " split. the difference," and give men $600 who were clearly entitled to $1,200, or nothing—and just as clearly bound by the act. of their agent, and, therefore, entitled to nothing at all—I cannot see ; but with their errors of law and incorrect con-- clusions as to facts the Circuit Court had nothing to do,. and it, therefore, committed no error in confirming the award.

The judgment of the Circuit Court must, therefore, be affirmed. The other judges concur.

BAKEWELL, J., delivered the opinion of the ccurt on a. motion for a rehearing.

This is a motion for a rehearing. It is accompanied with reasons, and counsel for respondents have filed, to support these reasons, a somewhat elaborate brief.

The point decided by this court was, that an award of arbitrators will not be set aside because it is against the evidence, and that it was not error in the Circuit Court to refuse to look into the question as to whether or not there was any evidence to support the award.

In the opinion filed in the cause, some leading English cases, and also decisions of the Supreme Court of this State,

were cited to show that the English rule has been followed from the first in Missouri, and that, on motion to vacate an award, the court will not enter into the merits of the case itself, and that, where the award is sufficient, in the absence of a mistake in fact or law, apparent on the face of the record, nothing but irregularity of the arbitrators in their proceedings, corruption, partiality, or misbehavior on their part, or fraud or concealment of evidence by the parties will warrant a court in setting aside an award. Counsel now cite authorities which they say have been overlooked by this court.

1. In the first place, they call our attention to the following provision of law in this State. Wag. Stat., ch. 8, sec. 23 : " Nothing contained in this act shall impair, diminish, or in any way affect the authority of a court of equity over the awards of arbitrators, on the parties thereto."

We are wholly at a loss to see why counsel supposed that this clause of the statute had escaped the attention of the court. There is nothing whatever in the point decided, or in the reasoning of this court, from which it can be gathered that equity in Missouri has not the same jurisdiction, in case of an award, as has been asserted for it by all the great chancellors of England and America. But that equity will set aside an award purely because it is not supported by the evidence is what is uniformly denied by every text-writer and every authority, elementary or otherwise, to which we have access. As the case before us turns on a motion to vacate an award at law, and is not a proceeding in equity, and as the equity powers of the court below have not been invoked by respondent, it is not at all necessary for the decision of this case to determine what equity would do if its aid was asked, although it is quite plain and settled, if anything at all is settled, that it could grant no relief.

The authorities in our own State which are now called to our attention seem to be in no respect opposed either

to the point decided by us in the case at bar, or to the reasoning by which that decision is supported. We will notice these cases one by one.

*Hyeronimus* v. *Allison*, 52 Mo. 102. In this case the court simply decides that, where the mind of an arbitrator is tainted with partiality when chosen, and he conceals the fact, it is a gross fraud, for which equity will set aside the award, and which, under our statute, is good as a defense at law.

The learned judge delivering the opinion of the court, in the course of his reasoning, says that " the strong marks of legislative solicitude that the arm of a court of equity in this regard should not be shortened, manifested in section 23 of the act referred to, make some authorities, which might otherwise be pertinent as showing, under different statutory regulations, a preclusion of equitable interference in cases of this sort, have no applicability when a statute such as ours is in force."

It is nowhere said or intimated, however, that our statute authorizes courts of equity to go behind an honest award to look into the evidence on which it is based.

*Squires* v. *Anderson*, 54 Mo. 193, is the next case which we are said to have overlooked. But, inasmuch as, in the language of the learned judge delivering that opinion, " the only question presented for the consideration of the court is whether the arbitrators, under the submission, had the power or right to estimate as permanent improvements the increased value of grapevines growing on the farm," and as no question of going into matters not submitted arises in the case at bar, we do not see why, in deciding the question before us, we should have particularly regarded this case, nor why it is cited to us now.

The next case is *Tucker* v. *Allen*, 47 Mo. 488. In this case the award was not attested till after suit, and the arbitrators were not sworn, that formality being waived by the parties. The court decides that these informalities did not

vitiate the award, and that it is for the court to determine, as a matter of law, what facts are requisite to constitute a valid award.

We again fail to see any principle decided which we have neglected to recognize, or which was material to the decision of the cause before us.

We are next asked to look at *Shores* v. *Bowen*, 44 Mo. 396. We have done so, and see that the award was there vacated because only two of the three arbitrators heard any of the evidence. The court says that the statute is peremptory that "all the arbitrators must meet together and hear all the proofs and allegations of the parties." We are at a loss to conceive how this decision affects the case before us. There is no pretense of any such misconduct here.

The next case cited is *Field* v. *Oliver*, 43 Mo. 200. For what purpose we are referred to this case we cannot imagine. Anything less in point could not be named. It decides:

1. That it is irregular to withdraw an award from the clerk's office to affix an attestation; and,

2. That where an insolvent plaintiff asks judgment on an award, and is a debtor to the defendant in a liquidated amount, not included in the submission and award, the chancellor has jurisdiction to decree a set-off, or other proper relief.

The last Missouri decision which we are said to have overlooked is *Shelbina Hotel Association* v. *Parker*, 58 Mo. 324. There the plaintiff sought to recover $172 on account of a mistake made by arbitrators. The plaintiff was made aware of the mistake by the arbitrators themselves, soon after they signed the award; nevertheless, he permitted it, without objection, to be confirmed by the court; and, these facts appearing on the face of the petition, the Supreme Court decides that it did not contain facts sufficient to constitute a cause of action.

We see no reason why we should be referred to these cases. They do not touch upon—certainly in no way impair—

the doctrine uniformly maintained in this State, and asserted in numerous cases cited by us from our reports, that incorrect conclusions of fact, or errors in law, are not enough to vacate an award, and that the Circuit Court cannot interfere unless there be partiality, corruption, gross miscalculation in a matter of figures, or decision in a matter not submitted.

"The question," says Judge Leonard, in *Bridgman* v. *Bridgman*, 23 Mo. 272, "is, not whether the arbitrators, who are the final judges both of the law and the fact, selected by the parties themselves, have erred in their judgment in respect to either, but whether they have been guilty of partiality or corruption, or any other misconduct prejudicial to the rights of the parties, or have failed to make a final, definite, or mutual award, or whether their award was procured by fraud or undue means."

We are also referred to *Hall* v. *Hind*, 12 Man. & G. 851. That case was known to the writer, and apparently was in his mind when he stated, in the opinion filed herein, that awards have been set aside for gross miscalculation in figures. That was a plain case of mistake. It was admitted on the part of Hall that £143 was due from him to Hinds; but the latter claimed a larger sum before the arbitrators, and, after an investigation of the matter in difference, the arbitrators found that a still further sum of £75 was due from Hall. Instead, however, of adding these two sums together, and directing Hall to pay the aggregate sum to Hinds, which would have been £218, the arbitrators, by mistake, deducted the £75 from the £143, and, by a still further mistake, directed by their award that Hinds should pay the difference to Hall. It was a manifest mistake of calculation, and was corrected by the court, and falls within the exceptions to the general rule which we expressly noted. The court, in this, merely amended the award to make it conform to the manifest intention of the arbitrators.

So in another case, cited by Kyd as having been tried in the King's Bench at Hilary term, 1799, the arbitrators

·distributed personal property amongst seven grandchildren, which, by the statute of distribution, belonged in equal moieties to the living daughter and five children of a ·deceased daughter.

The court swore the arbitrators as to whether they intended to follow the law, and, learning that they did not, said the award must not be disturbed; that where the .arbitrators, meaning to follow the law, mistake, it is reason ·to set aside the award, but where, knowing what the law is, ·or leaving it entirely out of consideration, they make what they conceive an equitable distribution, it is no objection ·that it is manifestly against the law. *Ainsley* v. *Goff*, Kyd, 354.

Lord Thurlow says, in *Rice* v. *William*, Brown, 163, if an award remained open to exception, it would seem to .be rather a reference than an award.

It was intended in this matter that the whole matter .should be referred to arbitrators, to the exclusion of the ·court.

And Lord Loughborough, in *Morgan* v. *Mather*, 2 Ves. jr. 22, said that if parties litigant consent to substitute arbitrators for a master, they might; but, if they consented ·to refer the whole matter to judges of their own, he could not correct the error of their judgment on the facts.

A Pennsylvania case is cited by counsel for appellants, but they do not seem to advert to the fact that no case in Pennsylvania can be in point on this question of the power ·of the court to inquire as to whether there is evidence to support an award, because of the peculiarity of the Penn-.sylvania statute.

Judge McKean, in *Williams* v. *Craig*, 1 Dall. 338, assimilates an award to the verdict of a jury, as to power to set it aside, but gives as his reason that the Pennsylvania act requires that, to make an award valid, it must be approved by the court. So Judge Washington, in *Hunt* v. *Hunt*— decided in United States Circuit Court of District of Penn-

sylvania, in 1803—says an award will be set aside for man-ifest error of law or fact, in Pennsylvania, but says the English rule does not apply there, because the award must. be approved by the court.

So that, if appellants complain that this is *dura lex*, we-can only reply, *sed lex*. As is said by Chancellor Kent, in *Underhill* v. *Van Cortlandt*, 2 Johns. (N. Y.) Ch. 367, " it is unprecedented to go into the merits of an award ; the reasonableness or unreasonableness of it does not affect its validity, so that there was no misbehavior or corrup-tion in the arbitrators."

The law on the subject is fully examined in that case. It is too well settled, both at home and abroad, in fact, to admit of argument.

2. Appellants, however, complain that we overlooked one main ground of error ; that the award should have been set aside for misbehavior in the arbitrators, in this, that they heard the argument of plaintiffs in the absence of defend-ants. It is asserted in the brief of counsel, to quote their language : " It was certainly *partiality*—not moral or cor-rupt partiality, but legal. It is no longer needful to resort to a proceeding in equity to upset an injustice of this. description. These propositions are well considered and well settled in *Knowlton* v. *Mickles*, 29 Barb. 465, and in. *Walker* v. *Frobisher*, 6 Ves. jr. 70."

Let us see whether these assertions are well considered. In the case at bar, it appears by the record that defendant had due notice to be present at the argument of the case ; that they declined to employ counsel, and did not go them-selves. One of the defendants swears that he did not go. because he went to a funeral, and that he thinks his. co-defendant had the rheumatism. Under the circumstances we do not see that the arbitrators did wrong in proceeding to hear the argument on behalf of the plaintiffs, who did attend.

But what becomes of the statement that it is authorita-

tively settled by the two cases cited above that such action on the part of the arbitrators is ground for setting aside the award? They are both cases, not of hearing argument after notice, but of taking testimony *ex parte*, without any notice to the opposite side.

In *Knowlton* v. *Mickles* the dispute was about damages caused by a dam. The arbitrators proceeded to examine the premises in dispute, in the absence of the defendant, attended by the plaintiff in person, and listened, then and there, to the statements of at least three persons as to their knowledge of the damage and its cause, and all this without the knowledge of, and in the absence of, defendant. On the authority of *Walker* v. *Frobisher* the award was vacated.

In *Walker* v. *Frobisher* the lord chancellor says that "the arbitrator had examined different witnesses at different times, in the presence of the parties, and recommended them not to produce any more witnesses. To that recommendation they accede. After that he hears three persons, and takes notes of what they said. It does not appear that he had any communication with other parties, and the arbitrator swears it had no effect on his award. I believe him; he is a most respectable man. But a judge must not take upon himself to say whether evidence improperly admitted had no effect upon his mind. The award may have done perfect justice, but, on general principles, it cannot be supported." The chancellor also says that the fact of the arbitrator taking notes at the time showed that it was not a question of mere conversations about the matter in dispute. There is no parallel at all between these two cases and the one before us. The misbehavior was palpable, and no court could hesitate to set aside the award. There is no pretense that the arbitrators in the present case were partial, or prejudiced, or consciously unjust. But it is now claimed that the fact that the evidence does not support the verdict is proof of partiality, in the sense in which the word

30

is used as a ground for vacating an award: But this is not the law.

We have gone somewhat at length into this matter because we are sensible of the apparent hardship of the rule in this case. There is nothing whatever in the reasons urged for a rehearing. To use the language of the learned judge in *Lee* v. *Patillo*, 4 Leigh, 443 : "If there be anything settled in the law it seems to be this : that, to set aside an award, you must show either a mistake apparent on its face, or misbehavior in the arbitrators. The court may be fully satisfied that the award has operated injustice, yet, if the mistake be not upon its face, and there be no proof of partiality or corruption, it will not touch it."

The application for a rehearing is denied. The other judges concur.