Argued 14 March, decided 30 April, 1907.

**FIRE ASSOCIATION *v.* ALLESINA.**

89 Pac. 960.

JURISDICTION TO ENJOIN ENFORCEMENT OF AWARD BASED ON FRAUD.

1. An award based on the fraud or perjury of the prevailing party will be set aside in equity and its enforcement permanently enjoined, a distinction being recognized between the dignity of a judgment and an award: *Friese* v. *Hummel,* 26 Or. 145, distinguished.

ARBITRATION AND AWARD—EVIDENCE OF FRAUD.

2. The evidence shows that the successful party to the arbitration in question presented to the arbitrators evidence that he knew to be false and that materially affected the award.

From Multnomah: ARTHUR L. FRAZER, Judge.

Suit by the Fire Association of Philadelphia against John Allesina, resulting in a decree for plaintiff.        AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. Henry E. McGinn.*

For respondent there was a brief over the name of *Veazie & Freeman,* with an oral argument by *Mr. J. Clarence Veazie.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the defendant from a decree enjoining him from maintaining an action at law on an award determining the extent of his injury by fire to a stock of umbrellas, parasols, etc., and cancelling a policy of insurance on such goods because of an alleged violation of the terms of the contract, which provided that it should be rendered void in case of fraud or false swearing by the insured touching any matter relating to the insurance or to the subject-matter thereof. The issues involved are stated in an opinion announced on a former appeal herein: *Fire Association* v. *Allesina,* 45 Or. 154 (77 Pac. 123). The cause was remanded, and from the testimony given at the trial the court found that the actual cash value of all the defendant's property contained in his store April 28, 1903, the time of the fire, did not exceed $7,109.26, which fact he at all times well knew; but that in a written statement of his loss he falsely swore that 3,351 umbrellas were of the value of $13,-

002.55, and that the worth of the parasols destroyed was $2,600; that, for the purpose of inducing the plaintiff to believe such statement was true, he exhibited to it a certain book and the entires therein, purporting to be invoices of his stock, taken at various times prior to the fire, and represented to plaintiff that the record was authentic, but that the pretended inventory was not correct, which fact he at the time the memoranda were so offered for inspection well knew. Based on these and other findings, a decree was rendered for plaintiff.

1. It is maintained by defendant's counsel that, assuming the award was superinduced by perjury and fabricated schedules, such testimony and feigned invoices are insufficient to defeat the determination of the appraisers on the issue submitted to them, and hence an error was committed in rendering the decree from which the appeal is taken. In *Friese* v. *Hummel,* 26 Or. 145 (37 Pac. 458: 46 Am. St. Rep. 610), it was held that equity has no jurisdiction to set aside a former decree for perjury or fraud, unless the willful giving under oath in a judicial proceeding of false testimony material to the issue, or the undue and unconscientious advantage taken of another, is collateral to the prior suit, the court saying: "The reason assigned in support of this rule is that causes once tried by a court having jurisdiction of the subject-matter and the parties should forever be at rest; that the unsuccessful party ought reasonably to expect, if he had an unscrupulous adversary, that perjured testimony would be offered at the trial, and should be prepared to meet it, and that, having gone into a consideration of the merits, he is estopped by the conclusion of the court." When an action or suit is tried in such forum, certain rules of procedure are rigidly enforced that are not generally observed at hearings before arbitrators. In regularly constituted tribunals the parties litigant are usually represented by vigilant counsel, who are more competent and therefore better able to detect and prevent perjury than their clients, who frequently appear without advocates before private persons chosen to settle disputed questions. The solemnity of a court trial is lacking at hearings before arbitra-

tors who, though supposed to be disinterested, are sometimes the active agents of the parties who selected them, and for these reasons we think an award is not entitled to that degree of respect which is accorded to a judgment or to a decree regularly rendered. The rule is supported by authority, and we believe founded in reason, that an award based on the fraud or false testimony of the prevailing party will be set aside in equity in a suit instituted for that purpose, and he will be enjoined from maintaining an action thereon: 3 Cyc. 744, note 33. In addition to the cases cited in the note mentioned, see, also, *North British Ins. Co.* v. *Lathrop,* 70 Fed. 429 (17 C. C. A. 175); *Wiley* v. *Platter,* 17 Ill. 538; *Boston Water Power Co.* v. *Gray,* 6 Metc. (Mass.), 131; *Smith* v. *Cutler,* 10 Wend. 589 (25 Am. Dec. 580); *Mitchel* v. *Curran,* 1 Mo. App. 453; *Teal* v. *Bilby,* 123 U. S. 572 (8 Sup. Ct. 239, 31 L. Ed. 263). We conclude, therefore, that if, in consequence of the defendant's fraud or perjury, he secured the award, a court of equity is competent to and should vacate the determination of the arbitrators and enjoin the maintenance of an action thereon.

2. Considering the case on its merits, the testimony discloses that for several years prior to the fire Allesina maintained a store at No. 309 Morrison Street, Portland, Oregon, where he manufactured, repaired and sold umbrellas, parasols, canes, etc. He kept a record of his business in books, which, having been offered in evidence, show the amount of money daily received for repairing umbrellas, the number recovered, the number sold, which also included parasols without enumerating them; the number of canes sold and the sums of money received for each class respectively, and for goods disposed of at wholesale. At the end of each month the aggregate of these several items was noted at the foot of the columns in which they appeared. Twice each year, until May 1, 1901, he also took an invoice of his stock and entered in a book kept for that purpose the number of umbrellas, parasols, canes and other supplies on hand, the value of each item, the money he had on deposit in banks, and the amount of his debts. Allesina on December 20, 1901, opened a branch

store at No. 286 Washington Street, and all goods sent to that place were first charged to the account of the Morrison Street store; a book having been kept showing the value of the stock so transfered and also of any that was returned.   When the branch store was started, the worth of the goods received thereat was marked on slips of paper that were kept on file, and additions were made thereto from time to time until about March 1, 1902, when the aggregate value, $10,786.25, was entered in the journal as of December 20, 1901.   A fire having occurred at the Morrison Street store, April 28, 1903, representatives of the plaintiff and of other insurance companies interested in the loss immediately examined Allesina's stock, the undamaged part of which he retained, consisting of 34 umbrellas, ranging in price from $3.50 to $8 each, though one was valued at $18.   The parties not being able to agree as to the extent of the injury, except in some minor matters, Allesina at the request of the adjusters delivered to them all bills showing the goods which he had received from January 1, 1902, to the time of the fire, and also gave them the books which had been kept at the Morrison Street store.   The loss not having been adjusted, Allesina presented to the agents of the insurance companies a claim for 1,296 umbrellas at $8 each, or $10,368; parasols, without stating the number thereof, $2,600; 2,055 other umbrellas valued at from 50 cents to $3.50 each, amounting to $2,634.55, making a total demand of $15,602.55.   As no part of this sum was paid, the parties by agreement submitted the controversy to arbitrators, one of whom and the umpire found the loss to be $13,562.18, or $62.18 more than the indemnity specified in the several policies of insurance.   All the other companies interested, except the plaintiff, paid the several sums specified in their contracts, and, to recover from the latter the $2,000 stipulated, Allesina instituted an action on the award, whereupon this suit was commenced, in the nature of a cross-bill in equity, resulting in a decree as hereinbefore stated.

The insurance adjusters found 505 parasols that had been damaged, but Allesina claims that there were others on the floor

of the store in a pile of rubbish that were not counted, the actual cash value of which, and of the 1,296 umbrellas mentioned, is the question to be determined. Allesina, in an examination upon oath, made pursuant to the terms of the policies of insurance, deposed that he took his last invoice of stock January 1, 1903, and found the cost thereof at the Morrison and Washington Street stores to be $22,935.80 and $10,520, respectively. Substituting words for abbreviations where they are used, in the inventory, it, is as follows:

```
5,461  Assorted umbrellas.............$17,233.00
  260  Assorted handles ;.............   682.50
       Umbrella furniture, cover
             and cloth ..................  2,420.75
  810  Assorted parasols .............  2,600.55—$22,935.80
Washington Street store ........................ 10,520.00
                                              _____
                                        .          .  $33,455.80
To Follmer ....................................... 13,482.88
                                              _____
                                               $19,972.92
```

The phrase, "To Follmer," as used in the inventory quoted, refers to Follmer, Clogg & Co., a corporation, doing business at Lancaster, Pa., from which Allesina purchased goods, and the figures appearing on the line with such words are intended to represent the sum of money he owed that company on account of the goods received from it. An invoice of the goods at the Washington Street store, taken January 1, 1903, shows the value thereof to be $12,217.97, instead of $10,520, as stated in the inventory of the Morrison Street store of that date, as above quoted. F. J. Alex Mayer, plaintiff's agent, as its witness, testified that he made a memorandum from the books kept at the Washington Street store, showing the items of the inventory made at that place, which writing having been offered in evidence, is as follows:

| | |
|---|---:|
| Umbrellas | $ 7,882.44 |
| Bases | 1,494.84 |
| Canes | 390.20 |
| Crops, whips | 48.40 |
| Ribs, frames | 822.67 |
| | $10,638.55 |
| 20 per cent | 2,127.70 |
| | $ 8,510.85 |
| Correct by dividing by 120, instead of deducting 20 per cent, makes | 8,865.45 |
| Handles, $5,785.05 | 2,892.52 |
| 543 yards of silk, net | 460.00 |
| | $12,217.97 |

H. N. Graham, the manager of the Washington Street store, as defendant's witness, testified that no book was kept showing the items of the inventory as disclosed by the memorandum quoted, in referring to which and to the information it affords he further said: "The only way that I can account for these figures is we might have had something of that kind in taking stock. There might have been a slip of paper." As the value of the goods, $12,217.97, indicated in the memorandum adverted to, exactly corresponds with the worth thereof as entered in the journal of the Washington Street store, we think there can be no doubt that Mayer saw the items specified in some manuscript and copied them correctly. An examination of a copy of the memorandum will show that 20 per cent was deducted from the first five items of the inventory and 50 per cent from the stated value of the handles. Allesina's attention having been called to the discrepancy in the inventories of January 1, 1903, as it appears by the books of the different stores, plaintiff's counsel, referring to the value of the goods at the Washington Street store, as disclosed by the books of the Morrison Street establishment, asked:

"How did you get it?" and the defendant replied:

"Taking off 15 per cent, that will give the figure. I do not know what I took off. * *

Q. Can you, by figuring off 15 or 20 per cent, or any other per cent, get $10,520 from the $12,217.97?

A. I wasn't very particular. I took more or less."

It seems improbable that after deducting from 20 to 50 per cent from the value of most of the stock at the Washington Street store, as appears by Mayer's memorandum, that a further reduction should be made by Allesina in entering the worth of such goods in the books which he kept at the Morrison Street store. A glance at the inventory of January 1, 1903, as entered on the book kept at the Morrison Street store, will show that Allesina indicates his then indebtedness to Follmer, Clogg & Co. to be $13,482.88. There was introduced in evidence the deposition of H. W. Hartman, the treasurer of that corporation, to which is attached a bill showing that from August 26, 1895, to April 15, 1903, the defendant purchased from his principal goods of the value of $79,972.10, and paid on account thereof $66,475.02, thus leaving due thereon, at the latter date, $13,-497.08, or $14.20 more than is admitted by the invoice. An examination of the bill referred to further discloses that from January 1, 1903, to April 15 of that year, Allesina purchased from that corporation goods valued at $2,095.63, and within that time he received credits on account, amounting to $6,581.43, thereby demonstrating that on January 1, 1903, he was indebted to Follmer, Clogg & Co. in the sum of $17,982.88, instead of $13,482.88, as he states in the inventory, a difference of just $4,500.

The books of the Washington Street store indicate the number of parasols sold thereat, but the number disposed of at the other store is included in the number of umbrellas. The testimony shows, however, that from January 1, 1903, to the time of the fire, no parasols had been sold at the Morrison Street store, and for this reason Allesina made a claim for the entire value thereof as stated in the last invoice at time it was made. From January 1, 1903, to April 28 of that year, Allesina's books and bills show that he purchased and that there were delivered at the Morrison Street store 1,238 umbrellas. Within

that time he sold at the store 1,343, transferred to the other store 1,053, and that there were found in the building after the fire 3,351 damaged umbrellas and 34 that were uninjured, so that on January 1, 1903, he necessarily had on hand 4,543 umbrellas at the Morrison Street store. It will be remembered, however, that the inventory of that date states that there were at such place 5,461 umbrellas—an overstatement of 918. The pretended record of Allesina's assets and liabilities on January 1, 1903, is therefore false in the particulars specified, and cannot be relied upon as furnishing any information from which the extent of his loss may be determined. It is impossible to state with any degree of certainty the value of the 1,296 umbrellas or of the 505 or more parasols for the damage to which a claim of $10,368 and $2,600, respectively, was made. Many of the umbrellas purchased had no handles, in which condition they were known to the trade as "bases." Allesina asserts that the worth of an umbrella depends largely upon the kind of a handle placed thereon, and that the cost of the completed articles exceeded the sums demanded therefor. We have earnestly tried, in every way that seemed feasible, to determine the extent of the loss, but have found it impossible. Some very valuable handles were undoubtedly destroyed by the fire, but, after many days' search in examining the books and bills offered in evidence, we are forced to the conclusion that the number of such handles, when attached to the bases, together with other completed umbrellas, constituting the number last mentioned, were not worth anywhere near the sum demanded for them, and what has been said of the umbrellas is also true of and applicable to the parasols.

From the fraudulent inventory which Allesina testified was correct, and from other circumstances connected with the case, we must determine that his sworn statement of his loss was made with knowledge of its falsity, as to the extent thereof, and, this being so, the decree is affirmed.        AFFIRMED.