THATCHER IMPLEMENT AND MERCANTILE COMPANY, Respondent, v. J. A. BRUBAKER, trading in the name of J. A. BRUBAKER & COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1916.

1. ARBITRATION: Pleading and Proof: Common-law Award: In an action on a common-law award the burden is on the plaintiff to plead and prove not only the award, but also the submission.

2. ———: Contracts: Situs. An agreement to arbitrate a dispute is a contract, and where such a contract was neither entered into nor performed in this State, it will not be held to be a Missouri contract.

3. ———: Arbitrators: Extent of Authority. Arbitrators have no power to bind the parties beyond the terms of the submission and if they assume to act on questions not submitted or fail to follow the directions in the submission in a material point, their award in reference to such matters will not be binding either on questions of law or fact.

4. ———: ———: ———. When plaintiff has proved the submission of a matter to a board of arbitration, and the award shows no material variance therefrom, and in the absence of proof of the particulars to which reference was made, the presumption will be indulged that they were as broad as the subject-matter defined in the formal agreement. All that is required of a submission to give it validity is that a cause of

action shall appear to exist in order that a frivolous claim or one which would be manifestly absurd, might not be the ground of the proceedings.

5. ———: **Arbitrators: Extent of Authority.** Arbitrators may be governed in their decisions by principles of equity as well as law and though their decisions be not according to law yet their report will not be set aside unless it appears that they have misapplied the principles by which they profess to be governed or have been misled in the application of them.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Guthrie, Gamble & Street* for appellant.

*Grant I. Rosenzweig, Chas. E. McCoy* and *Sam M. Hutchinson* for respondent.

JOHNSON, J.—Plaintiff, a mercantile corporation doing business as a dealer in hay in Thatcher, Ariz., brought this suit in the circuit court of Jackson county against defendant, a dealer in the same commodity in Kansas City, to recover upon an award rendered in favor of plaintiff by the committee on arbitration of the National Hay Association which, as its name implies, is an association composed of dealers in hay doing business in the United States. The principal office of the association where its arbitration committee, consisting of five members, sits and transacts business is in Winchester, Ind.

Defendant was a member of the association but plaintiff was not when they entered into a contract which gave rise to the controversy between them nor was plaintiff a member when this controversy was submitted to the committee and the award was made and published. The contract provided for the sale by plaintiff to defendant of sixty cars of alfalfa hay to be shipped from Thatcher via El Paso to New Or-

leans by a designated route. When the hay arrived at destination defendant refused to receive it on the ground of plaintiff's failure to comply with the routing stipulation which resulted in delay in the transportation and consequent loss in the value of the hay. A controversy ensued which the parties, on July 3, 1912, agreed in writing to submit to the decision of the arbitration committee and this agreement, together with a mass of documentary evidence and a written statement of plaintiff's claim, were forwarded to the committee at Winchester. The committee received and filed the agreement and accompanying documents but refused to proceed unless the parties would make out, sign and file a written submission of the controversy on blanks conforming to the rules of the committee. Pursuant to this ruling a new agreement to submit the pending controversy was drawn on an approved blank, was signed by plaintiff at Thatcher, and by defendant at Kansas City, and was forwarded to and filed with the committee at Winchester.

It recited that "a controversy has arisen between the complainant and J. A. Brubaker of Kansas City, Mo. . . . over the purchase of sixty cars of hay by J. A. Brubaker from the complainant, as more particularly set out in the agreement for arbitration not on the blanks of the National Hay Association but now on file with the secretary of the Association in connection with the papers setting forth the contention of the complainant and the evidence in support thereof," and followed with the stipulation of the parties "to submit hereinbefore referred to difference and controversies to the arbitrament and decision of the committee on arbitration and investigation regularly appointed by the National Hay Association or any three of them who may be present at the time fixed for the hearing or who may concur in the finding of any one of them according to the by-laws, rules and

regulations of said National Hay Association, and we do further authorize and empower the said committee . . . or any three of them who may be present at the time fixed for the hearing, or who may concur in the finding of any one of them to arbitrate, award, adjust and determine the differences and controversies now existing between us for the matter aforesaid. We do further agree that the award so made . . . shall in all things by us . . . be well and faithfully performed, that we will stand to and abide by and fulfill the same, and that we will pay whatever sum of money may be awarded as aforesaid, and further that we will abide by the by-laws, rules and regulations of said National Hay Association relating to arbitration. And we do hereby release the said committee jointly and severally from any and all claims or demands by reason of error in judgment or findings of law.''

This agreement is in evidence but for some reason the informal agreement of July 3, 1912, to which it refers for a more particular statement of the controversy was not introduced in evidence.

The committee, without taking and subscribing to an oath and without hearing any testimony or arguments of the parties, but proceeding solely from an inspection of the written statements and documents filed by the respective parties, made and published on November 7, 1913, the following written award, signed by four of the five members of the committee:

"After reviewing carefully the entire pleadings and evidence with rebuttal and surrebuttal, we, the undersigned members of the Arbitration Committee, find as follows:

"Citation 1. The original contract was not complete and was faulty, it not being in accordance with National Hay Association Trade Rule No. 1, which reads as follows:

"It shall be the duty of both buyer and seller to include in their original articles of trade, whether conducted by wire or mail, the following specifications:

Numbers of cars or tons
Number of bales
Size of bales
Grade of hay or straw
The point of shipment or delivery or rate point
The time of shipment or delivery
The route and terms, except as follows:

The specifications of Rule I shall apply except in cases where the buyer and seller have been trading on agreed terms and conditions, in which event it shall be sufficient for the words, "usual terms" to be used in telegrams, and the use of such words shall imply that such terms and conditions as govern previous trades of like character shall govern."

"Citation 2. Trade Rule No. 8, in the absence of a proper confirmation, shall govern this transaction. This Rule reads as follows:

"Terms of sale" shall mean that the weights and grades of shipment shall be determined by the terminal or destination market rules, unless otherwise specified at time of the sale."

"Citation 3. The shipper violated this contract when he assumed authority to divert cars without instructions from buyer.

"Citation 4. The Committee considered the buyer, J. A. Brubaker & Co., was justified in repudiating this contract inasmuch as the shipper violated his contract as set out in Citation 3.

"Citation 5. The Committee decided unanimously that in view of the fact that had the defendants handled this hay as per original contract, they would have suffered a loss of $2 per ton on 1,437,325 pounds, by reason of decline in the market and we, therefore, assess loss against the defendants in the amount of

$1,437.32 with interest at six per cent. from May 31, 1912, until November 15, 1913, making a total amount due the plaintiffs of $1,563.09, which should be paid within fifteen (15) days from the date of award.''

As might be expected neither party was satisfied with this award which we must regard as the product of a faithful observance by the arbitrators of the stipulation of the parties that their dispute should be settled by the rules and laws of the Association and not by the principles and rules of the juridical contract law of the land.

The contract of sale was pronounced ''faulty'' because the parties, one of whom was a stranger to the Association had not drawn it in accordance with the laws of the Association, but it escaped being denounced as void, and the arbitrators found that plaintiff had breached its terms by diverting the shipment to another route without the consent of defendant and ruled that defendant was justified by such breach in rescinding the contract and refusing to accept the hay. This would have ended the case in favor of defendant in a court of law, but the committee, in an honest effort to do what they conceived to be complete justice, found that if plaintiff had fully performed the contract and defendant had received the hay at New Orleans defendant would have lost $2 per ton, or $1437.32 and adjudged that defendant, though fully justified in rescinding the contract must, nevertheless, pay over to plaintiff the amount of the loss he would have sustained. Concluding it was wiser to take this half loaf than to risk all by refusing it, plaintiff accepted the award and brought this suit to enforce it. Feeling that the juridical law which, at first, he despised but now applauds, would have given him a complete victory under the committee's findings of fact, defendant seeks to escape the award by attacking its validity.

His answer interposes a number of defenses but in his brief and argument he contends, first, that the arbitrators were required "to keep inflexibly within the limits of the particular matter submitted to them in the submission agreement," and since plaintiff, upon whom devolved the burden of proving not only the award but also the submission agreement containing the matters submitted to the committee, failed entirely to prove that agreement, there was such a failure of proof as to preclude a recovery on the award; and, second, that "the award is inconsistent on its face and, therefore, is invalid." The alleged inconsistency consists of the error of law involved in the award to plaintiff in the face of the finding that defendant was not in the wrong but was justified in refusing to receive the hay.

At the close of plaintiff's evidence, the court directed a verdict for defendant whereupon plaintiff took an involuntary nonsuit with leave and in due course of procedure brought the case here by appeal.

That the parties agreed in writing to submit their controversy to arbitration and chose the arbitration committee of the National Hay Association as their arbitrators, with the knowledge that the hearing would be held and the award made and published at the office of the committee in Winchester, Ind., are conceded facts which compel the conclusion that the questions of the validity of the proceedings and award are not to be determined by the law of this State relating to arbitrations. An agreement to arbitrate a dispute is a contract (Searles v. Lum, 81 Mo. App. 611, and cases cited) and since the contract in question was neither entered into nor performed in this State, there is no ground upon which it might be pronounced a Missouri contract. It did not become effective as a contract until it was filed with and accepted by the committee in Indiana, and since it was made and performed in that State the question of its validity must

be judged by the laws of that State. So judged its terms disclose an agreement for a common law and not a statutory arbitration. In this State the right of disputants to agree to a common law arbitration is recognized—the statutory and common-law methods of arbitration being regarded as distinct and concurrent remedies aiming at the same result—and the test of whether the parties intended a common law or a statutory arbitration is the form of the agreement of submission, i. e. whether it was parol or in writing. It was held by the Supreme Court in Bridgman v. Bridgman, 23 Mo. 272, that a submission to arbitration in writing is within the statute, although there is no clause authorizing a circuit court judgment to be entered upon the award made pursuant to the submission. [See, also, Hamlin v. Duke, 28 Mo. 166; Wolfe v. Hyatt, 76 Mo. 156; Williams v. Perkins, 83 Mo. 379; Searles v. Lum, supra, l. c. 610; Triplett v. Sims, 89 Mo. App. l. c. 330; Cochran v. Bartle, 91 Mo. l. c. 644; Tucker v. Allen, 47 Mo. l. c. 490.] At common law the submission agreement may be either in parol or in writing (Searles v. Lum, supra.) In Indiana an agreement of submission to be regarded as one for a statutory arbitration must be in writing and must provide "that such submission be made a rule of any court of record designated in such instrument." [Boots v. Canine, 58 Ind. 450.] In that case the court held the agreement which was in writing to be an agreement for a common-law arbitration because of the absence of the second of "the two essential requisites to a statutory arbitration."

In an action, such as this, upon a common-law award the burden is on the plaintiff to plead and prove not only the award, but also the submission. It is elementary that arbitrators have no power to bind the parties beyond the terms of the submission (Lorey v. Lorey, 60 Mo. App. 420) and "if they assume to act on questions not submitted or fail to follow the

directions in the submission in a material point, their award in reference to such matters will not be binding either on questions of law or of fact.'' [Squires v. Anderson, 54 Mo. 193, and cases cited.] The submission furnishes the source and prescribes the limits of the arbitrator's authority and a failure to prove the agreement for submission is fatal to a recovery upon the award. [3 Cyc. 674.]

But plaintiff did prove the agreement under which the cause in controversy was submitted to the arbitrators and its failure to introduce the rejected agreement which, with its accompanying documents, was treated in the formal agreement and held by the committee as a mere bill of particulars, and their supporting evidence, was not a failure to prove the terms of the submission to which the documents under consideration bore the relationship of mere evidentiary exhibits. The formal agreement defined the subject-matter and cause of action to be submitted as ''a controversy between the parties over the purchase of sixty cars of hay by defendant from plaintiff'' and while it may be conceded that the award could not stand as to matters not embraced in the bill of particulars to which the agreement referred, we must assume, in the absence of a showing to the contrary that the particulars in their totality equaled in scope the subject-matter and cause defined in the formal agreement; that is to say, they included every part of the entire controversy which had arisen between the parties ''over the purchase of sixty cars of hay.''

The same presumptions must be indulged in favor of an award that apply to judgments of courts of record and the party objecting to the award must show the fact of its illegality. [Kendrick v. Tarbell, 26 Vt. 416.] An award will be presumed to be within the submission unless the contrary expressly appears (Bush v. Davis, 34 Mich. l. c. 198) and to embrace all that was and nothing that was not submitted.

[Dickerson v. Rourke, 30 Pa. St. 390.]    As is pertinently observed in Eberts Exec. v. Ebert, Admrs., 5 Md. 352: "A more liberal and reasonable interpretation is now adopted by the courts, than formerly existed, as to awards.

"Every reasonable intendment will be made in their favor, and a construction given to them that will support them, if possible, without violating the rules adopted for the construction of instruments. It will be intended that the arbitrators have not exceeded their powers; that all matters have been decided by the arbitrators, unless the contrary shall appear on the face of the award; that it is certain, final and legal. Unless, therefore, it shall appear upon the face of the award that the arbitrators have exceeded their powers, it will not be intended that they have, for every intendment will be made in favor of the award."

And it is said in Sperry v. Ricker, 4 Allen (Mass.) 17: "It is the legal presumption, unless the contrary appears, that arbitrators *pursue the submission* and decide only the matters therein contained, and also that they decide all matters submitted to them." [See, also, Hadaway v. Kelly, 78 Ill. 286; Tank v. Rohweder, 98 Ia. 154.]

We hold that plaintiff proved the submission, that on its face the award shows no material variance therefrom and that in the absence of proof of the particulars to which reference was made the presumption will be indulged that they were as broad as the subject-matter defined in the formal agreement. All that is required of a submission to give it validity is that a cause of action shall appear to exist in order that a frivolous claim, or one which would be manifestly absurd, might not be the ground of the proceedings. [Skillings v. Coolidge, 14 Mass. 43; Rexford v. Nye, 20 Vt. l. c. 137; Burchell v. Marsh, 17 How. 344; Littleton v. Patton, 112 Ga. 438.]

Passing to the second ground of attack it must be conceded the assessment therein in favor of plaintiff could not be justified in law, but the parties agreed to submit their dispute to judges untrained in the law who were to be governed in their decision by the laws and rules of the Association relating to business transactions between members. Certainly defendant who was a member could have no reason to complain of his rights being determined under the rules he selected in preference to the law of the land which he rejected. But if the agreement had not substituted the Association's laws and rules, the result·would be the same in this case. A tribunal of this character is not supposed to know anything of law and unless partiality or corruption, gross miscalculation in a matter of figures or decision in a matter not submitted be shown, the courts cannot interfere,· either at law or in equity.` [Reily v. Russell, 34 Mo. 524; Shawhan v. Baker, 167 Mo. App. 1. c. 34; Vaughn v. Graham, 11 Mo. 576; Bridgman v. Bridgman, 23 Mo. 1. c. 274; Shroyer v. Barkley, 24 Mo. 1. c. 352; Mitchell v. Curran, 1 Mo. App. 453; Allan v. Hickam, 156 Mo. 1. c. 58; 5 Corp. Juris., 72, 180, 244.]

As is said in Vaughn v. Gordon, supra: "Arbitrators may be governed in their decisions by principles of equity as well as law and though their decision be not according to law yet their report will not be set aside unless it appears that they have misapplied the principles ,by which they profess to be governed or have been misled in the application of them."

We cannot regard the error in question as anything more than a mere error of law to be .expected of untrained judges who, authorized by the terms of the submission not to decide the case according to law but according to their own conceptions of justice and equity have rendered a decision which expresses neither law, justice nor equity, but was a kind of decision the parties bargained for. Courts will give no relief

against errors of that sort. The court erred in directing a verdict for defendant.

The judgment is reversed and the cause remanded. All concur.