## ST. PAUL FIRE & MARINE INS. CO. OF ST. PAUL, MINN., v. TIRE CLEARING HOUSE, Inc.

## LONDON & LANCASHIRE INS. CO., LIMITED, OF LONDON, v. SAME.

## NATIONAL RESERVE INS. CO. OF ILLINOIS v. SAME.

### Nos. 9313, 9312, 9311.

Circuit Court of Appeals, Eighth Circuit.

April 22, 1932.

William R. Gilbert, of St. Louis, Mo., (Anderson, Gilbert & Wolfort, of St. Louis, Mo., on the brief), for appellant St. Paul Fire & Marine Ins. Co., of St. Paul, Minn.

J. H. Cunningham, of St. Louis, Mo. (George C. Willson and Taylor, Chasnoff & Willson, all of St. Louis, Mo., on the brief), for appellants London & Lancashire Ins. Co., Limited, of London and National Reserve Ins. Co., of Illinois.

P. H. Cullen, of St. Louis, Mo. (Abbott, Fauntleroy, Cullen & Edwards, of St. Louis, Mo., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

BOOTH, Circuit Judge.

There are here three appeals. The printed record in one (No. 9313) is presented; and by stipulation it is agreed that the other two appeals shall be argued upon the same record, and that the decision in No. 9313 shall be binding in all the appeals.

Appellee, plaintiff below, brought separate suits in the Hannibal court of common pleas, Marion county, Mo., against each of the appellants on fire insurance policies issued by them respectively, covering property of plaintiff; under which policies plaintiff claimed liability of defendants had arisen by reason of a fire which had destroyed or damaged part of the insured property. The cases were duly removed to the United States District Court for the Northern Division of the Eastern District of Missouri; and were subsequently removed to the Eastern Division of the Eastern District.

In the case against the St. Paul Fire & Marine Insurance Company, which we shall now follow, the amount demanded was $4,500 on stock of merchandise, and $250 on fixtures; those being the coverage amounts of the policy.

The answer admitted the issuance of the policy; admitted the occurrence of the fire; admitted that the loss on store and office furniture and fixtures was $250; and alleged that as to the loss on the stock of merchandise, an appraisal had been had and that the loss and damage to the stock of merchandise had been found to be $6,724.02, and that the pro rata share of the appellant under its policy was $1,359.93 on account of loss to stock, making a total of $1,609.93, for which appellant was liable; and alleged that the amount had been tendered to the appellee, but had been declined, and alleged that that amount was due and appellant was willing to pay said amount.

Plaintiff, in its reply, attacked the validity of the appraisal and award on various grounds.

Defendant in response to the attack made upon the award, denied generally the allegations set forth by plaintiff, and alleged certain affirmative matter. The issue thus raised was transferred to the equity side of the court for hearing preliminary to a trial on the merits before the jury.

On this equitable issue the court made findings of fact and conclusions of law, which are set out in the margin;[1] and by its de-

---

[1] Findings of Fact.

"The court having considered the evidence introduced by both parties upon the issue presented, makes the following findings of fact:

"1. That the defendant and other insurance companies insured a stock of merchandise belonging to plaintiff, consisting chiefly of tires, tubes and rims, situated at 3027 Locust St., in the sum of $22,500, and that of said sum $250 covered on furniture and fixtures under a policy issued to plaintiff by the St. Paul Fire & Marine Insurance Co.

"2. That on the 23rd day of February, 1929, a fire occurred at the location and place designated in said policies and said property was injured and damaged by fire.

"3. That on the 12th day of March, 1929, plaintiff and defendants signed a paper entitled 'Agreement for submission to Appraisers' and said paper was also signed by the other companies insuring upon said loss;

"4. The agreement for submission to appraisers affecting all the policies in suit except the National Reserve, contains the following provision relating to the making of the appraisement.

" 'Shall appraise and examine by items and in detail the sound value of and the loss and damage to the property destroyed or damaged by the fire of Feb. 23, 1929, as specified below.'

"In the National Reserve Insurance Company agreement for submission to appraisers, the language there used is 'shall appraise and ascertain the sound value of and the loss separately upon each item of the property damaged or destroyed.'

"5. All of the agreements for submission to appraisers contain the following clause:

" 'It is further expressly understood and agreed

cree declared the award a nullity and set the same aside.

Thereafter the right of the plaintiff to recover on the cause of action set out in its complaint was tried to a jury. Verdict and judgment followed for plaintiff.

The appeal was taken both from the judgment and from the decree setting aside the appraisal award.

that in determining the Sound Value and the Loss and Damage upon the property, hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the loss; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor and shown in the award.'

"6. The policy provisions relating to appraisal are as follows:

" 'The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss.'

"7. That said Agreement for Submission to Appraisers provided, among other things, that said appraisers should appraise and examine by items and in detail the sound value of and the loss and damage to the property destroyed or damaged by the fire of February 23, 1929;

"8. That said agreement further provided that said appraisers were to make an estimate of the actual cash cost of replacing or repairing the property or the actual cash value thereof at and immediately preceding the time of the loss and in case of the depreciation of the property from use, age, condition, location or otherwise, a proper deduction should be made therefor and shown in the award.

"9. The provisions in the policies issued by defendants relating to appraisal stipulates that the appraisers together shall estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire and the award, in writing, of any two shall determine the amount of the loss;

"10. That pursuant to said agreement, W. J. Flynn was appointed as an appraiser by the plaintiff and A. W. Strubel was appointed as an appraiser by the defendant and the other companies and they selected W. L. Bowcott as an umpire;

"11. That thereafter said Flynn and the said Strubel undertook to examine and appraise said property and the loss and damage caused by the fire but after an examination of a few of the items the said Flynn refused to act further in the matter and did not sign the award mentioned herein;

"12. That thereafter the said Strubel, in connection with said Bowcott, returned a paper writing set forth in defendant's answer, called an award, and stated therein the sound value of said property at the time of the fire, exclusive of fixtures, was $21,732.05 and that the loss and damage by fire to said property was $6,724.14;

"13. That the actual value of the property insured, exclusive of fixtures, at the time of the fire was substantially greater than the value as appraised, and the amount of the loss by reason of the fire was substantially greater than the amount of the loss as stated in the award.

"14. The Court further finds that the said Strubel and Bowcott omitted to appraise a material part of the property insured; that the said appraisers omitted and did not take into consideration in estimating the value of the property and in estimating the amount of damages, lots six, seven and ten;

The assignments of error and the argument in this court relate only to the decree setting aside the appraisal award. By one or more of the assignments of error relied upon, appellants challenge the findings of fact and conclusions of law made by the court as not being in conformity with Rule 70½ of the New Equity Rules promulgated by the Supreme Court of the United States (28 USCA § 723).

that said lots, six, seven and ten, so omitted, consisted of tires and other property that had a value of approximately $2,000 and that by reason of omitting said items the appraised value of said property was reduced in the sum of $2,000 and that the loss and damage upon said items amounted to approximately $1,500 and that the loss and damage by reason of the omission of said lots was $1,500 less than it should have been.

"15. The Court further finds that property in excess of $480 was totally destroyed by fire and that the said Strubel placed a valuation upon property totally destroyed at an arbitrary figure of $480 and the Court finds that the value of property totally destroyed was in excess of $2,000.

"16. The Court further finds that said Bowcott did not participate in arriving at the item of $480 damage on account of goods totally destroyed and neither did the appraiser Flynn, and that figure was inserted by the appraiser Strubel as a mere guess or arbitrary figure and that the said Strubel and Bowcott heard no testimony as to the amount of property totally destroyed and out of sight and that when plaintiff attempted to communicate with them, the said Strubel ordered him out of the premises and gave him no opportunity to present evidence tending to show what property was totally destroyed.

"17. The Court finds that the property wholly destroyed was not so visible and open to inspection that the amount or value of said property prior to the time of the fire could be determined upon inspection and that it was necessary, in order to arrive at a correct estimate of the value of the property wholly destroyed to act upon information or evidence and that the said Strubel and Bowcott had no information and no evidence as to the value of the property totally destroyed and refused to see information or to hear evidence as to the value of the property totally destroyed.

"18. The Court further finds that the said Strubel was not an impartial or disinterested person but was biased and prejudiced in favor of the defendants and was desirous of returning an inadequate award of the amount of loss which plaintiff suffered.

"19. The Court further finds that in the examination of said loss and in estimating the value of the property and the amount of loss the said Strubel acted arbitrarily and intentionally omitted material portions of the property owned by plaintiff at the time of the fire and the damage thereto and that the award, as to the amount of damages, is grossly below the actual loss which plaintiff sustained on account of the fire.

### "Conclusions of Law.

"Therefore, the premises considered, the Court finds as a matter of law that said appraisals and said awards, as heretofore set forth herein, are not binding upon plaintiff and should be set aside.

"It is therefore Ordered, Adjudged And Decreed by the Court that said award set forth by defendants in their answers be and the same is hereby declared a nullity and of no force or effect and the same is hereby vacated, cancelled and set aside, and that plaintiff have and recover of and from the defendant its costs in this behalf laid out and expended."

We have examined the findings and conclusions in the light of the challenge, and are of the opinion that they are in substantial conformity with the rule mentioned, and are sufficient to enable this court to properly exercise its appellate jurisdiction. This, we think, is all that the rule requires. Parker v. St. Sure (C. C. A.) 53 F.(2d) 706; see Panama Mail S. S. Co. v. Vargas, 281 U. S. 670, 50 S. Ct. 448, 74 L. Ed. 1105.

It may be noted in passing that no request was made by defendants in the court below for specific findings or for modification of the findings made.

The record discloses that the parties having failed to agree upon the amount of the loss and damage, entered into an agreement for an appraisal award.

The appraisers and an umpire were accordingly chosen, and entered upon their duties. The damaged property, consisting mainly of automobile tires, tubes, and accessories, was divided into twenty-five lots.

The agreement for appraisers, contained provisions relating to the making of the appraisement substantially as follows:

"* * * shall appraise and estimate, by items and in detail, the sound value of, and the loss and damage to the property destroyed or damaged by the fire of February 23rd, 1929, as specified below. * * *

"It is further expressly understood and agreed that in determining the sound value and the loss and damage upon the property, hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash cost of replacing or repairing the same, or the actual cash value thereof, at and immediately preceding the time of the loss; and in case of depreciation of the property from use, age, condition, location or otherwise, a proper deduction shall be made therefor and shown in the award."

The policy provisions relating to appraisal contained the following: "The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss."

It is apparent that the provisions of the appraisal agreement and of the policy are not in all respects harmonious. The two appraisers disagreed, almost from the start, both as to method and as to figures. After reaching conclusions, tentative at least, with the aid of the umpire, as to three or four of the parcels, Flynn, one of the appraisers, refused to proceed further, and left the place. Strubel, the other appraiser, and the umpire, Bowcott, completed the appraisal and signed an award. The award was as follows:

"To the Parties in Interests

"We have carefully examined the premises and remains of the property hereinbefore specified, in accordance with the foregoing appointment, and have determined the sound value and loss and damage to be as follows:

| | | Sound Value | Loss and Damage |
|---|---|---|---|
| 1st Item | Stock Tires Tubes & Accessories | 21731.60 | 6724.12 |
| 2nd Item | | | |
| 3rd Item | | | |
| 4th Item | | | |
| 5th Item | | | |
| 6th Item | | | |

Total Sound Value and Total Loss and Damage........

"Witness our hands this ——— day of ———.

"A. W. Strubel,  Appraisers

"W. L. Bowcott,  Umpire"

It is clear that the award does not comply with the agreement for appraisal. This, of itself, may constitute ground for setting aside the award. Thatcher Implement, etc., Co. v. Brubaker, 193 Mo. App. 627, 187 S. W. 117; Security Printing Co. v. Westchester Fire Ins. Co., 204 Mo. App. 390, 221 S. W. 430; Security Printing Co. v. Conn. Fire Ins. Co., 209 Mo. App. 422, 240 S. W. 263; Mound City, etc., Co. v. Springfield, etc., Co., 218 Mo. App. 395, 277 S. W. 349; Security Printing Co. v. Hartford Fire Ins. Co. (Mo. App.) 245 S. W. 1089; St. P. Fire & Marine Ins. Co. v. Eldracher, 33 F.(2d) 675 (C. C. A. 8); Continental Ins. Co. v. Garrett (C. C. A.) 125 F. 589.

The findings of fact disclose various grounds as a basis for setting aside the appraisal award. We do not find it necessary to discuss them in detail. Fraud, misconduct, carelessness, or partiality on the part of one or more of the appraisers, which results in and is evidenced by an award grossly below the actual loss sustained, will generally justify the setting aside of the award. 5 C. J. 191, § 485; 4 Cooley's Briefs on Insurance, p. 3642; Burchell v. Marsh, 17 How. 344, 351, 15 L. Ed. 96; Levin v. N. W. Nat. Ins. Co. (C. C.) 185 F. 981; Non-Royalty Shoe Co. v. Phoenix Assurance

Co., 277 Mo. 399, 210 S. W. 37; Harrington v. Agricultural Ins. Co., 179 Minn. 510, 229 N. W. 792, 68 A. L. R. 1340; Robertson v. Boston Ins. Co. (Minn.) 239 N. W. 147; Baldinger v. Camden Fire Ins. Assn., 121 Minn. 160, 141 N. W. 104; Huested v. Patrons' etc., Co., 223 Mich. 213, 193 N. W. 815; Bradshaw v. Agricultural Ins. Co., 137 N. Y. 137, 32 N. E. 1055; Doherty v. Phoenix Ins. Co., 224 Mass. 310, 318, 112 N. E. 940; Royal Ins. Co. v. Parlin, etc., Co., 12 Tex. Civ. App. 572, 34 S. W. 401, 403; Pennsylvania, etc., Co. v. W. T. Waggoner Estate (Tex. Com. App.) 39 S.W.(2d) 593, 595.

In Corpus Juris, supra, the rule is thus stated: "The mere fact that an award is different in amount from what the court would have given will not of itself necessitate setting it aside. But, where the amount is so palpably excessive or inadequate as to produce a conviction that the arbitrators must have been biased or corrupt, the award will be set aside. And it has been held that where the damages awarded are not so excessive as of themselves to show fraud or error, but are extraordinary in amount, this may, in connection with other circumstances tending to show improper conduct on the part of the arbitrators, be sufficient to set aside the award."

In the case of Non-Royalty Shoe Co. v. Phoenix Assurance Co., supra, the court said (page 415 of 277 Mo., 210 S. W. 37): "A difference of a few thousand dollars in a total of an alleged loss of approximately thirty-five thousand dollars might be expected, but a difference of more than twenty-five thousand dollars in the respective figures is seemingly incompatible with impartiality and argues inferentially in favor of carelessness, circumvention or ignorance. We do not know and we are not saying on which side the truth lies. * * * But nothing is clearer than that one side or the other has grievously erred. Carelessness, or ignorance, we think, which (to take arguendo the view which favors plaintiff) entailed a loss of twenty-five thousand dollars upon the latter would of itself constitute such constructive fraud as to justify relief. The evidence adduced upon the trial both by plaintiff and defendant touching the condition of the machinery, seems upon the cold record to be 'fair upon its face.' But the fact remains that the colossal discrepancy in the figures indicates a condition wholly in conflict with any theory of verity, or fair dealing attributable simultaneously to both sides. These obvious conclusions arise as inferences, which we think were for the triers of fact (Knorpp v. Wagner, 195 Mo. loc. cit. 662, 93 S. W. 961; State ex rel. v. Elliott, 157 Mo. loc. cit. 618, 57 S. W. 1087, 80 Am. St. Rep. 643); and when considered in connection with the other charges noted (which were conceded in effect), made a jury question of this point.".

In Baldinger v. Camden Fire Ins. Assn., supra, the court said (page 105 of 141 N. W.): "No exact rule can be stated whereby to determine the amount of inadequacy which will justify a finding of fraud. To some extent each case must stand by itself; the evidence of inadequacy being viewed in connection with attendant circumstances. There is no fixed ratio between the award and the actual loss which will determine for all cases that the inadequacy is or is not so gross as to constitute fraud. The difference must be so great that it appears from such difference alone, or from such difference and circumstances attending, that the award is not the result of an honest and fair judgment, and that it is so grossly inadequate that it operates as a fraud upon the insured."

The court found that the actual value of the property insured, exclusive of fixtures, at the time of the fire, was substantially greater than the value as appraised. And the court also found that the award as to the amount of damages was grossly below the actual loss which plaintiff sustained on account of the fire.

Plaintiff claimed, and Mr. Steinberg, its president, testified, that the value of the property before the fire was $34,845, and that the loss sustained was $23,189.

The award states that the value of the property before the fire was $21,732 and that the loss sustained was $6,724.

Of course, discrepancy between the amount of loss testified to in behalf of plaintiff and the amount found by the award does not prove inadequacy of the award, or misconduct on the part of the appraisers. But the testimony of three qualified, disinterested witnesses was that they examined the various lots of the property after the fire and placed the percentage of loss and damage against each of the lots. If we disregard the valuations placed by plaintiff upon the various lots (except as to three lots, 6, 7, and 10, upon which Strubel and Bowcott placed no value), but take the valuations fixed by Strubel and Bowcott and apply thereto the percentages fixed by the three disinterested witnesses, we find the

total loss to be more than twice that fixed by the award. A like result follows, even if the three lots mentioned are eliminated. The record discloses that these three lots of the property (6, 7, and 10), consisting of tires, were excluded entirely from the award. The valuation placed by plaintiff upon these lots respectively was $929, $1,072.50, and $170.50. The percentages of loss, as fixed by the three disinterested witnesses, were 100 per cent., 50 per cent., and 25 per cent., respectively.

Witnesses testified that the tires in lots 6 and 7 were "adjustment tires" and had a returnable value at the factory.

Mr. Strubel testified as to the consideration given to these lots on the appraisal as follows:

"In Lot 6 all the tires were used tires. They were not damaged by the fire. Water was the only thing that hit them. They had no value, they were all worn out, junk tires. We did not examine each and every one, we examined quite a few; they were all worn out. We didn't allow a cent on Lot No. 6.

"On Lot No. 7 we did not allow anything. Oh, they may be worth five or ten cents apiece, something like that. They were just junk tires and I didn't figure them any value at all. * * *

"Lot 10 was the same, more junk tires. We looked at them and considered them junk and passed them up."

The record also discloses that certain property was totally destroyed and was no longer visible—called "out of sight" property. This is sometimes referred to in the record as lot 26. The amount and value of this property are in sharp dispute. It consisted mainly of tubes, and the remains after the fire were largely stems and valves. Mr. Steinberg, for plaintiff, testified that the value of this lot was $2,939. The award included $480 for 400 "tubes out of sight." The trial court found the value to be in excess of $2,000.

Mr. Strubel testified how the award was made in reference to this lot: "I put this $480.00 there for goods totally destroyed when Flynn agreed to it. I wrote that there, it is in my handwriting. I wrote it because in the first part of the tube item Flynn wanted to get a higher price on tubes to take care of what was out of sight. I said 'No, we will make an item out of it, if there is anything out of sight we will put it down where it belongs.' I didn't find anything out of sight. You cannot tell whether any goods burned up or not. I did not ask for a book statement for the amount of goods that had been purchased or sold or an inventory. There wasn't any debris there. There was sawdust, but that is not debris. There was no remains of partially burned tubes. * * * I did not see any ashes and never found a valve stem."

Mr. Bowcott testified as follows:

"There was a discussion about out-of-sight goods. I was not called on that. I did not have anything to do with it and did not settle it. After Flynn quit I had nothing further to do with that, as that was settled before, I presume. I didn't have anything to do with it. I think while they discussed Lot No. 2 they discussed the tubes out-of-sight. I do not know what Flynn agreed to on that. * * *

"I do not know about what Steinberg was claiming on goods burned out-of-sight. I did not investigate and did not have anything to do with that part of the award in regard to out-of-sight goods."

Mr. Flynn testified as follows: "There really was only one thing I agreed to there, because they said they had checked that clearly, and that was the amount of tubes that had been burned in a small—about four hundred, I think—they said some small matter of tubes that had been burned up, totally destroyed, and Strubel said they were satisfied as to that, they had checked that and found it to be right, so they were willing to let it go at that, the amount of totally destroyed tubes in some lot."

Other testimony was to the effect that there was a large quantity of débris in which were hundreds of valve stems.

The net result of this testimony seems to be that both of the appraisers and the umpire disclaim any responsibility for the valuation placed upon the "out-of-sight" property, and none of them ascertained the facts.

The record further discloses that as to several lots of the property, inspection alone was not sufficient basis upon which to determine the value and the amount of the same.

As to the lots 6, 7, and 10, evidence would have disclosed that they consisted of "adjustment tires" and had a value.

As to the "out-of-sight" property, evidence would have disclosed the amount and value of the same.

Even as to the general valuation on all of the lots, evidence would have been helpful.

Mr. Strubel testified as to the difference between plaintiff's figures and those of the appraisal as follows: "The difference in discount accounts in a large measure for the differences between our figures and Steinberg's figures. I got my information about Steinberg's volume from a salesman for the Goodyear Tire & Rubber Company shortly before the fire. He said nothing about what Steinberg's contract should be for 1929, he simply said that Steinberg was the second largest Goodyear account in St. Louis."

We do not hold that appraisers are bound in all cases to take evidence upon the questions submitted to them. But we do hold that in the appraisal here involved, when fact matters came up for determination by the appraisers, or one of them, and the umpire, upon which they had no accurate knowledge and upon which evidence was available, it was their duty to give the parties in interest opportunity to produce such evidence.

Mr. Steinberg was available as a witness to aid the appraisers by his testimony as to the character of the property in lots 6, 7, and 10; as to the amount and value of the "out-of-sight" property; as to the discounts actually received by him in the purchase of the property damaged or destroyed. He was given no opportunity to testify. Instead, an unsuccessful attempt was made by Mr. Strubel to have him ejected from the premises where the appraisal was going on.

The result was an award made up in disregard of some important relevant facts and in ignorance of others.

Viewing the whole appraisal proceedings in the light of the principles announced in the authorities above cited, we think the trial court was fully justified in setting aside the award.

Various other matters argued by appellants have been considered, but do not require discussion.

The judgment appealed from is affirmed.