## AZAR v. EUREKA–SECURITY FIRE & MARINE INS. CO. et al.

### No. 1173.

District Court, S. D. Texas, Galveston Division.

Sept. 12, 1933.

Armstrong, Cranford, Barker & Bedford, of Galveston, Tex., for plaintiff.

Gill, Jones & Tyler, of Houston, Tex., for Va. Fire & Marine Ins. Co.

Bryan & Bryan, of Houston, Tex., for Eureka-Security Fire & Marine Ins. Co.

King, Wood & Morrow, of Houston, Tex., for St. Paul Fire & Marine Ins. Co.

HUTCHESON, Circuit Judge.

Plaintiff, having sustained a fire loss, sued at law the Eureka-Security Fire & Marine Insurance Company and other insurance companies upon their covering policies. A binding award of appraisers was presented in defense. Plaintiff thereupon filed an equitable plea to set aside and vacate the award. A jury having been waived, the issues, legal as well as equitable, were set for trial before the judge. These issues were: (1) Whether there had been a total loss, and the defendants were therefore liable at all events as on valued policies for their face, $16,000; (2) whether the award of the appraisers was not a valid and binding award because incomplete, partial, arbitrary, and unjust; (3) what was the extent of the actual loss plaintiff had sustained?

Without discussing the evidence, it is sufficient to say, of the first issue, that no case of total loss was made out by the plaintiff. On the contrary, the evidence so plainly shows a substantial portion of the building unburned that, though plaintiff did argue on the issue of damage that more than $16,000 damage had been sustained, it was not seriously contended that the building was a total loss.

On the second issue, however, whether the award should be set aside, plaintiff argued vigorously and convincingly that the failure of the appraisers to find sound as well as damage value as required by the appraisal clause of the policy, taken together with the great inadequacy of the award, the undisputed evidence of the partisan and partial attitude of the appraisers, together with the fact established that in making the appraisal of the extent of the damage that which was not seen was to a large extent taken on faith without the adequate investigation which the conditions required, deprived the appraisal of binding effect, and left the matter at large for the court to determine.

The evidence overwhelms here that the appraiser for the insurers, looking upon himself as their champion, frankly and openly proceeded with his part in the appraisement with the purpose of protecting and advancing their interests, and in a manner calculated to do so, regarding the appraiser for the plaintiff as the opposing champion for his side. Resourceful, skillful, and energetic, in diligence and preparedness he overwhelmed the other appraiser, who, though as complete, was by no means as effective a partisan. In fact, plaintiff's appraiser, while stubbornly insisting on a total loss, was so unenergetic and unhelpful in combating the specific contentions of the insurer's man at arms that the umpire was forced to climb into the lists himself and fend a little for the plaintiff's side to keep the insurers' champion from sweeping the field. This resulted in imposing on the umpire for a brief space a great burden of preparation and consideration which it was not contemplated in the agreement he should

have to undertake. It resulted also in raising the figures which the appraiser for the insurers had come prepared to maintain from something over $5,000 to $8,000 finally arrived at. It did not result, however, in bringing about an appraisement of the kind intended, in which each appraiser, proceeding in a disinterested and impartial way, would undertake to arrive at a fair and impartial result, submitting to the umpire for decision the points of difference upon which they could not agree, nor did it result in a just award. The evidence introduced before me leaves no question but that the sum awarded is greatly less than the damage sustained. If such an appraisement, notwithstanding the manner of its conducting, had resulted in substantial justice, that is, in an award representing within reasonable limits the damage sustained, a court of equity might well sustain it. Failing to do so, it must fall.

In addition to the fundamental vice of partisanship which has deprived the proceedings of the quasi judicial cast they should have, other matters, the failure of the appraisers to carefully investigate and determine the extent of the damage to the unexposed studding, the failure of the original award to follow the policy terms by showing sound, as well as loss value, weigh against, and, if weight were wanting, complete the overthrow of, the award. For, while there may be cases in which the mere failure alone to find sound damage in the award as first returned will not be fatal to it, especially if the appraisers later complete the finding, and while omissions and oversight as to damaged items may occur, and there may exist an alertness and interest exercised by an appraiser to bring out all the facts favorable to the side of the one appointing him smacking of partisanship, and still the award hold in equity, which regards substance and not form, all these matters have their weight in the scale, and, when all exist, then no make weights or presumptions will be thrown in, no overnice balancing of the scales will be resorted to, to sustain it.

It will serve no purpose to discuss or analyze the authorities. It is sufficient to say that appraisements of the kind in question, requiring evidence as to the damage done as well as an appraisement of the money loss, are to be governed substantially by the rules which govern arbitrations, and that, when a policy provides, as this one does, for a disinterested appraisement, an award will not be binding, unless it is made in an impartial, disinterested, and fair way, upon a full knowledge of the facts, and is couched in substantially the form the policy requires. Continental Ins. Co. v. Garrett (C. C. A.) 125 F. 589; St. Paul Fire & Marine Ins. Co. v. Tire Clearing House (C. C. A.) 58 F.(2d) 610; Reliance Ins. Co. v. Bowen (Tex. Civ. App.) 54 S.W.(2d) 597; Milwaukee Mechanics' Ins. Co. v. West Dev. Co. (Tex. Civ. App.) 275 S. W. 203; Delaware Underwriters v. Brock, 109 Tex. 425, 211 S. W. 779; Pennsylvania Fire Ins. Co. v. Waggoner (Tex. Com. App.) 39 S.W.(2d) 593; Great Am. Ins. Co. v. Marbury (Tex. Civ. App.) 297 S. W. 584; Frick v. Christian County (C. C.) 1 F. 250.

When the third issue, the amount of actual damage, is reached, and the estimates of those who testified are examined, it is plain that a healthy skepticism must add a grain or so of salt to them, for they consist of mere opinions as to the cost of rebuilding a damaged structure; opinions which have not been and cannot be subjected to the acid test of competitive contracting. Considering all of the opinions in the light of all the facts, especially the fact that many of these estimates have undergone changes, I am of the opinion that the award of the appraisers is somewhat farther below the actual damage than the claim of the plaintiff for the face of his policy is above it, and I fix as a just recovery $13,000.

For this amount and his costs, plaintiff may have judgment.